

[ ORIGINAL ]

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2012 APR 11   AM 8:37

DEPUTY CLERK_____

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, INDIVIDUALLY AND AS NEXT FRIEND OF ARDEN LOUISE COLGIN, A MINOR, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | |
| REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC., ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD, and NORTH RIO VISTA, LTD, | § § § § § § § § § § | **3-12CV-1116M** (JURY DEMANDED) |
| Defendants. | § | |

## NOTICE OF REMOVAL

Defendants, REMINGTON ARMS COMPANY, LLC ("Remington") and SPORTING GOODS PROPERTIES, INC. ("SPGI"), by and through their undersigned attorneys, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby notify this Court that they are removing the above-captioned action currently pending in the County Court of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division.   In support, Remington and SPGI state as follows:

1

**INTRODUCTION**

1.      On March 9, 2012, Plaintiff Bianca Elliot Colgin, individually and as next of friend of Arden Louise Colgin (hereinafter "Plaintiff"), filed her Original Petition against Remington, SPGI and six landowner defendants, (1) Robert M. Farrell, (2) Robert M. Farrell, LLC, (3) Robert M. Farrell Development, Ltd., (4) Robert M. Farrell Family Partnership #1, Ltd., (5) Robert M. Farrell Family Partnership #2, Ltd, and (6) North Rio Vista, Ltd. in the County Court of Dallas County, Texas.[1]

2.      Remington was served with the Original Petition on March 20, 2012. SPGI has not yet been served, but consents to and joins in this Notice of Removal. This Notice of Removal is therefore timely filed less than thirty (30) days after Remington was served.

3.      The United States District Court for the Northern District of Texas is the federal judicial district encompassing Dallas County, Texas. Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

4.      The Landowner Defendants have collectively filed an answer to Plaintiff's Original Petition. Because this Notice of Removal is based on Plaintiff's improper

---

[1]      Copies of all of the Texas state court pleadings which have been filed in this action to date, including Plaintiff's Original Petition, are attached hereto as Exhibit A. Plaintiff's Original Petition, after specifically identifying the six Texas defendants, thereafter refers to them collectively as "the Landowner Defendants." (Pet. at p. 2). Remington and SPGI will refer to those six Texas defendants in a similar fashion throughout this Notice of Removal.

joinder of the Landowner Defendants, Remington and SPGI have not sought consent of the Landowner Defendants to removal.[2]

5.     The Clerk of the County Court for Dallas County, Texas, and Plaintiff's counsel have been given notice of the filing of this Notice of Removal.

## DIVERSITY JURISDICTION

6.     Remington and SPGI's basis for removal to federal court is diversity jurisdiction pursuant to 28 U.S.C. § 1332, because: (1) there is complete diversity of citizenship between Plaintiff and the properly joined defendants, Remington and SPGI, and (2) the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

7.     Remington is a limited liability company organized under the laws of the state of Delaware with its principal place of business in North Carolina.   Remington's sole member is a Delaware limited liability company with its principal place of business in North Carolina.  Thus, for the purposes of diversity jurisdiction, Remington is a citizen of Delaware and North Carolina.[3]

---

[2]     When removal is based upon a plaintiff's improper joinder of in-state defendants, it is not necessary for the removing out-of-state defendants to obtain consent from the improperly joined in-state defendants. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("[A]s a general rule, removal requires the consent of all co-defendants.  In cases involving alleged improper or fraudulent parties, however, application of this requirement to improperly or fraudulently joined parties would be nonsensical. . . .").

[3]     Remington's sole member is FGI Operating Company, LLC ("Operating"), a Delaware limited liability company with its principal place of business in North Carolina. Operating's sole member is FGI Holding Company, LLC ("Holding"), a Delaware limited liability company with its principal place of business in North Carolina.

8.      SPGI is a corporation organized under the laws of the state of Delaware with its principal place of business in Delaware.  For diversity jurisdiction purposes, SPGI is a citizen of Delaware.

9.      Plaintiff resides in Dallas County, Texas, and is a citizen of Texas.  (Pet. at p. 1).

10.     The Plaintiff has improperly joined the Landowner Defendants in her Original Complaint for the impermissible purpose of defeating federal diversity jurisdiction.

## PERTINENT BACKGROUND

11.     Plaintiff's action is premised on the alleged accidental discharge of a Remington Model 700 bolt-action rifle that killed her husband, Clinton Colgin.  (*See* Pet. at p. 3, and the Palo Pinto County Sheriff's report, attached hereto as <u>Exhibit B</u>).   In her Original Petition, Plaintiff alleges that on November 7, 2010, her husband was shot and killed while "in the cab of a pickup truck on a ranch near Palo Pinto, Texas" when the Remington Model 700 rifle "discharged without a trigger pull." (Pet. at p. 3).    William Raymond Hullum ("Hullum") is alleged to have been in the pickup truck with the Plaintiff's decedent at the time of the shooting. *Id.*   Hullum is alleged to have been an employee "of one or more" the Landowner Defendants and "acting within the course and scope of his employment" at the time of the shooting.  *Id.*

---

Holding's sole member is Freedom Group, Inc., a Delaware corporation with a principal place of business in North Carolina.

12.     Plaintiff's Original Petition asserts product liability claims against Remington and SPGI sounding in strict liability, negligence, breach of warranty and for exemplary or punitive damages. (Pet. at p. 6-20).   What should otherwise be a straightforward product liability diversity action by a Texas citizen against two product manufacturers which are citizens of Delaware and North Carolina, has instead been morphed into a conjured attempt to destroy federal diversity jurisdiction by naming as defendants the Texas Landowner Defendants.  Because Plaintiff has no reasonable basis to establish liability against the Landowner Defendants, their joinder is improper and Remington and SPGI have the statutory right to remove this action to federal court.

13.     On information and belief, Defendant Robert M. Farrell ("Farrell) is the uncle of the Plaintiff's decedent.   The other Landowner Defendants are collectively owned and/or controlled by Farrell.  The Palo Pinto County ranch where the shooting allegedly occurred is alleged to be owned by "[o]ne or more of the Landowner Defendants." (Pet. at p. 3).

14.     In her Original Petition, Plaintiff purports to state two causes of action against the Landowner Defendants, one sounding in "Negligence/Respondeat Superior" and the other in "Negligent Activity."  (Pet. at p. 20-22).  The Negligence/Respondeat Superior claim is premised on Plaintiff's allegation that Mr. Hullum was "acting within the course and scope of his employment" for the Landowner Defendants at the time of the shooting incident.  (Pet. at pp. 3, 20).[4]   The  Negligent Activity claim is premised on

---

[4]     Other than being with Plaintiff's decedent "in the cab of a pickup truck on a ranch near Palo Pinto," the Plaintiff's Original Petition does not allege any specific actionable

the allegation that the Landowner Defendants were careless and negligent in failing to "prevent and/or preclude negligent activities from occurring on their land . . . [.]" (Pet. at p. 21). For the reasons that follow, the Plaintiff has no reasonable basis to recover against the Landowner Defendants under either theory of recovery and, as a result, her joinder of those non-diverse Texas defendants is improper. Remington and SPGI are therefore entitled to remove this action to federal court.

15.     The shooting in question occurred on the morning of Sunday, November 7, 2010, the second day of the deer hunting season in Palo Pinto County. Hullum was neither working for any of the Landowner Defendants nor acting within the scope of any employment for the Landowner Defendants on the day of the shooting. Instead, he was hunting on the ranch property with his friend, the Plaintiff's decedent. (*See* Palo Pinto County Sheriff's Report at Ex. B; the Texas Parks and Wildlife Department's Hunting Accident and Incident Report, attached hereto as Exhibit C; and the Declaration of Martin A. Brown, attached hereto as Exhibit D)

16.     At and immediately prior to the shooting, Mr. Hullum and the Plaintiff's decedent were riding in a pickup truck on or near the Landowner Defendants' ranch property. Mr. Hullum was driving the truck. Plaintiff's decedent was in the front passenger's seat. Plaintiff's decedent was carrying the subject Remington Model 700 rifle with him in the truck. As they neared a gate inside the ranch, the two hunters saw a feral hog. Mr. Hullum stopped the truck and exited the driver's door. The Plaintiff's

---

conduct by Mr. Hullum such as how, or in what manner, he was negligent at the time of the shooting incident. (Pet. at p. 3).

decedent disengaged the loaded rifle's manual safety mechanism and pointed the rifle out the front passenger window to see if he could get a shot at the hog.  Not having a shot at the hog, the Plaintiff's decedent asked Mr. Hullum whether he could see the hog from where he stood on the driver's side of the truck.   When Mr. Hullum replied that he could see the hog, the Plaintiff's decedent tried to hand the rifle butt-first across the cab of the truck to Mr. Hullum.   As the Plaintiff's decedent was attempting to hand the rifle to Mr. Hullum, the rifle was loaded, the rifle's manual safety was in the "off" or "fire" position, and the muzzle of the rifle was pointed at the Plaintiff's decedent's head.  At some point during the attempted exchange of the rifle, it fired.  The bullet struck the Plaintiff's decedent in the head.  (*Id.*)

## IMPROPER JOINDER[5]

17.    The improper joinder doctrine "ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity." *Gonzales v. Homeland Ins. Co. of New York*, No. 11CV123, 2011 WL 3104104, *2 (S.D. Tex. July 25, 2011) (quoting *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009)).   It is axiomatic that a plaintiff may not orchestrate destruction of diversity jurisdiction by joining a resident defendant having no real interest in the controversy or whose presence in the lawsuit is primarily to destroy diversity jursidiction.

---

[5]    The term "improper joinder" evolves from and includes the term "fraudulent joinder," a doctrine originally developed by courts to remedy bad faith joinder of a non-diverse party to prevent removal of a case to federal court. "Improper joinder" is a broader concept, however, and has been adopted by the Fifth Circuit as the preferred terminology. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir. 2004).

*Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545-46 (5th Cir. 2004).

18.    In the Fifth Circuit, there are two ways to establish improper joinder:  (1) fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a reasonable basis for recovery against the non-diverse party.  *Smallwood v. Ill. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2005) (internal quotation omitted).

19.    Under the first test, a removing defendant can establish improper joinder through, *inter alia*, collusion between the plaintiff and the non-diverse co-defendants. Courts have long recognized that "common sense" and circumstantial evidence, such as a family relationship, may lead the court to "strongly doubt" that the plaintiff has a real intention in good faith of seeking a judgment against the alleged improperly joined co-defendants. *In Re Diet Drugs*, 220 F.Supp.2d 414, 422 (E.D. Pa. 2002); *Joe v. Minnesota Life Ins. Co.*, 257 F. Supp. 2d 845, 849 (S.D. Miss. 2003) (recognizing "circumstantial evidence" of collusion between certain defendants and the plaintiffs constituted fraudulent joinder); *see also Wilson v. Republic Iron & Steel. Co.*, 257 U.S. 92, 99 (1921) (upholding the denial of a plaintiff's motion to remand when the district court found that the resident defendant was joined "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal").

20.    Under the second test, removal is appropriate when "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.   A reasonable basis for state liability

requires that there be a reasonable possibility of recovery, not merely a theoretical one. *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461-62 (5th Cir. 2003).   Even when a plaintiff identifies causes of action recognized by state law, removal is warranted where the state court petition fails to allege "specific actionable conduct" sufficient to support the causes of action asserted against the non-diverse defendants. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).  Thus, a necessary inquiry is whether the facts alleged—or the lack thereof—in the pre-removal state court petition are sufficient to sustain the asserted cause of action:  "Whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the *factual fit* between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701. (emphasis added).    In the first instance, district courts are to "conduct a Rule 12(b)(6)-type analysis" to determine whether a plaintiff has stated a valid state law cause of action against a non-diverse defendant. *Smallwood*, 385 F.3d at 573; *Anderson v. Ga. Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009).   Moreover, in cases where a plaintiff has otherwise stated a cause of action but has "misstated or omitted discrete facts that would determine the propriety of joinder," the district court may pierce the pleadings to identify those "discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74; *Cook v. Wells Fargo Bank, N.A.*, 3:10-CV-0592-D, 2010WL 2772445, at *3 (N.D. Tex. July 12, 2010) (Fitzwater, J).

      21.    Apart from the apparent family relationship between the decedent, Clinton Colgin, and William Farrell, the Plaintiff's barebones recital of a respondeat superior

claim against the Landowner Defendants falls far short of the heightened pleading requirements of Rule 8 mandated by the Supreme Court. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *see also Gonzales*, 2011 WL 3104104, *3 (S.D. Tex. July 25, 2011) (denying motion to remand where plaintiff failed to "plead any specific facts, or explain the what, where, when, and how, to support these allegations" against the in-state defendant).

22.     Moreover, the conclusory allegation of the Plaintiff's Original Petition that Mr. Hullum was acting "in the course and scope of his employment" is not only insufficient, it is patently incorrect. According to Mr. Hullum himself, Mr. Hullum and the Plaintiff's decedent were on the ranch property hunting at the time of the shooting. (*See* Ex. B, C, and D). Plaintiff does not have a reasonable basis of recovery against the non-diverse Landowner Defendants on the respondeat superior claim.

23.     In addition, Plaintiff fails to plead the necessary elements of a respondeat superior claim predicated on an alleged employee having negligently acted within the course and scope of his employment. Under Texas law, Plaintiff must plead and prove that at the time of the shooting Hullum was acting (1) within the general authority given to him by his employer; (2) in furtherance of the employer's business; and (3) for the accomplishment of the objective for which Hullum was employed. *Saenz v. Family Sec. Ins. Co. of Am.,* 786 S.W.2d 110, 111 (Tex. App. 1990) (scope of employment appropriate for determination as a matter of law where factual allegations demonstrate alleged employee was not acting in furtherance of his duties). The Original Petition does not even mention these requisite elements, let alone sufficiently plead any facts in

support thereof.    Regardless, as is known to Plaintiff, Mr. Hullum was not acting in the scope of any claimed employment by the Landowner Defendants, but was instead hunting with the Plaintiff's decedent at the time of the shooting incident. (*See t*he Clinton Colgin obituary, attached as <u>Exhibit E</u>:  "Clinton James Colgin, 28, died on November 7, 2010, in a hunting accident in Palo Pinto County.").

24.    The Plaintiff's second cause of action against the Landowner Defendants, the "Negligent Activity" claim, fails to state a cause of action under Texas law.    As purported owners of the ranch property where the shooting is alleged to have occurred, the Landowner Defendants are subject to the limitations of liability proscribed in Tex. Civ. Prac. & Rem. Code Ann. § 75.001, *et. seq*. (West) (hereinafter the "Recreational Use Act" or the "Act").  The Plaintiff's decedent was killed while hunting on ranch property owned by the Landowner Defendants.   The Recreational Use Act bars negligence claims against a Texas landowner who permits persons to engage in specified recreational activities, including hunting, on agricultural property such as a ranch.   Plaintiff's claim of "Negligent Activity" is therefore statutorily barred by the Act.   Under the Act, the only duty owed to Plaintiff's decedent by the Landowner Defendants was "not to injure him by willful, wanton or gross negligence." *Knorpp v. Hale*, 981 S.W.2d 460, 472 (Tex. App. Ct. 1998).   Plaintiff's Negligent Activity claim against the Landowner Defendants is, however, predicated solely on allegations of mere negligence and does not contain any allegation of willful, wanton or gross negligence. As a result, there is no reasonable basis

for recovery against the Landowner Defendants under the Negligent Activity claim of Plaintiff's Original Petition.[6]

## AMOUNT IN CONTROVERSY

25.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, exclusive of interest and costs.  If it is facially apparent from the Plaintiff's Original Petition that the amount in controversy exceeds the removal threshold, then the removing defendant need only point this out to successfully meet its burden. *See Cross v. Bell Helmets, USA*, 927 F. Supp. 209, 213 (E.D. Tex. 1996).

26.     Here, Plaintiff asserts a wrongful death claim alleging that her decedent, Clinton Colgin, was killed in the shooting incident.  (*See* Pet. at p. 7, 9, 10 and 20).

27.     Furthermore, exemplary or punitive damage claims are to be included in analyzing whether the amount in controversy requirement is met. *See, e.g., Bassett v. Toyota Motor Credit Corp.*, 818 F. Supp. 1462 (S.D. Ala. 1993); *Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698 (S.D. Miss. 1988); *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994).  Courts routinely hold that seeking punitive damages alone (without any consideration of other damages) meets the jurisdictional amount in controversy. *See, e.g., Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) ("A court, in applying only common sense, would find that if the plaintiffs were successful in their punitive

---

[6]     Furthermore, Plaintiff's allegation that the Landowner Defendants were negligent in allowing the firing of guns from the cabs of pickup trucks is contrary to the Tex. Parks & Wild. Code Ann. § 62.003 (b) which permits hunting from a vehicle on private property: "Animals . . . may be hunted from a motor vehicle . . . within the boundaries of private property[.]" *Id.*

damages claim, they would collect more than [the amount in controversy]. Accordingly, we hold that the face of the complaint supports the assertion of federal jurisprudence."); *Smith v. Associates Capital Bank*, No. 1:99CV301, 1999 WL 33537131, *7 (N.D. Miss. Dec. 6, 1999) (stating that "the Plaintiffs' inclusion of a claim for punitive damages in their original complaint compels the conclusion . . . that the Plaintiffs' claim for punitive damages alone exceeds the requisite amount in controversy.").

28.     Because both of the requirements for federal diversity jurisdiction under 28 U.S.C § 1332 are satisfied, *i.e.*, complete diversity of citizenship between the Plaintiff and the two properly-joined defendants, and the amount in controversy exceeds the statutory minimum, this action is properly removed by Remington and SPGI.

WHEREFORE, Defendants, REMINGTON ARMS COMPANY, LLC and SPORTING GOODS PROPERTIES, INC., hereby give notice that this action is removed from the County Court of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division.

Dated:  April 11, 2012.

Respectfully submitted,

James D. Jordan
Bar Number: 11012380
**Munsch Hardt Kopf & Harr, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Fax:  (214) 978-4359
jjordan@munsch.com

—Of Counsel—

Dale G. Wills
(*pro hac vice* application forthcoming)
Andrew A. Lothson
(*pro hac vice* application forthcoming)
**Swanson, Martin & Bell, LLP**
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Telephone:  (312)-321-9100
dwills@smbtrials.com
alothson@smbtrials.com


**ATTORNEYS FOR DEFENDANT
REMINGTON ARMS COMPANY, LLC, and
SPORTING GOODS PROPERTIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via certified mail, return receipt requested, on this 11th day of April, 2012, to:

Jeffrey W. Hightower, Jr.
William O. Angelley
Hightower Angelley LLP
4144 N. Central Expwy., Suite 1230
Dallas, Texas 75204

Parker P. Polan
400 W. 14th St., Suite 100
Austin, Texas 78701

Mark Ramsey
Ramsey & Murray, P.C.
1500 CityWest Blvd., Suite 1000
Houston, Texas  77042-2354

James D. Jordan



# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BIANCA ELLIOTT COLGIN, INDIVIDUALLY AND AS NEXT FRIEND OF ARDEN LOUISE COLGIN, A MINOR,** | § § § § | |
| **Plaintiff,** | § § § | |
| **V.** | § § | **CIVIL ACTION NO.** |
| **REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC., ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD., and NORTH RIO VISTA, LTD.,** | § § § § § § § § § § § § § § | _____ |
| **Defendants.** | § § § | |

**REMINTON ARMS COMPANY, LLC'S
INDEX OF DOCUMENTS FILED IN STATE COURT ACTION**

| EXHIBIT No. | DATE FILED | DESCRIPTION OF DOCUMENT |
|---|---|---|
| A-1 | 3/9/2012 | Plaintiff's Original Petition |
| A-2 | 3/19/2012 | Service – Return (Robert M. Farrell) |
| A-3 | 3/19/2012 | Service – Return (Robert M. Farrell, LLC) |
| A-4 | 3/19/2012 | Service – Return (Robert M. Farrell Development Ltd.) |
| A-5 | 3/19/2012 | Service – Return (Robert M. Farrell Family Partnership #1, Ltd.) |
| A-6 | 3/19/2012 | Service – Return (Robert M. Farrell Family Partnership #2, Ltd.) |

**EXHIBIT A:  INDEX OF DOCUMENTS FILED IN STATE COURT ACTION – Page 1**

| EXHIBIT NO. | DATE FILED | DESCRIPTION OF DOCUMENT |
|---|---|---|
| A-7 | 3/19/2012 | Service – Return (North Rio Vista Ltd.) |
| A-8 | 3/28/2012 | Defendants' Original Answer |
| A-9 | 3/28/2012 | Jury Demand |
| A-10 | | Court's Docket Sheet certified 4/9/2012 |



Filed
12 March 9 P1:20
John Warren
County Clerk
Dallas County

Cause No. CC-12-01595-A

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN,<br>INDIVIDUALLY AND AS NEXT FRIEND OF<br>ARDEN LOUISE COLGIN, A MINOR, | § <br> § <br> § <br> § | IN THE COUNTY COURT |
| Plaintiff, | § <br> § | |
| vs. | § <br> § | |
| REMINGTON ARMS COMPANY, LLC,<br>SPORTING GOODS PROPERTIES, INC.,<br>ROBERT M. FARRELL, ROBERT M.<br>FARRELL, LLC, ROBERT M. FARRELL<br>DEVELOPMENT, LTD., ROBERT M.<br>FARRELL FAMILY PARTNERSHIP #1, LTD.,<br>ROBERT M. FARRELL FAMILY<br>PARTNERSHIP #2, LTD, and NORTH RIO<br>VISTA, LTD, | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | AT LAW NO. 1 |
| Defendants. | § | DALLAS COUNTY, TEXAS |

---

## PLAINTIFF'S ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff, in both her individual and representative capacities, complains of Defendants, as follows:

### PARTIES, JURISDICTION, AND VENUE

Plaintiff, Bianca Elliott Colgin, individually, and as "Next Friend" of Arden Louise Colgin, a minor, resides in Dallas County, Texas.

Defendant REMINGTON ARMS COMPANY, LLC ("Remington") is organized and incorporated under the laws of the State of Delaware and its principal place of business is located in North Carolina.

---

PLAINTIFF'S ORIGINAL PETITION                                                      PAGE 1

EXHIBIT A-1

Defendant SPORTING GOODS PROPERTIES, INC. is organized and incorporated under the laws of the State of Delaware and its principal place of business is located in North Carolina.

Defendants above shall be referred to as "the Remington Defendants".

Defendant ROBERT M. FARRELL is an individual residing in Dallas County, Texas.

Defendant ROBERT M. FARRELL, LLC is a Texas Domestic Limited Liability Company, with its principal office at 8235 Douglas Ave., Suite 815, Dallas, Texas 75225.

Defendant ROBERT M. FARRELL, DEVELOPMENT, LTD. is a Texas Domestic Limited Partnership, with its principal office at 8235 Douglas Ave., Suite 815, Dallas, Texas 75225.

Defendant ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD. is a Texas Domestic Limited Partnership, with its principal office at 8235 Douglas Ave., Suite 950, Dallas, Texas 75225.

Defendant ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD. is a Texas Domestic Limited Partnership, with its principal office at 8235 Douglas Ave., Suite 950, Dallas, Texas 75225.

Defendant North Rio Vista, Ltd. Is a Texas Domestic Limited Liability Company, with its principal office at 8235 Douglas Ave., Suite 815, Dallas, Texas 75225.

The six Defendants immediately above shall be referred to as "the Landowner Defendants."

At all times relevant to this action, the Remington Defendants had sufficient minimum contacts to subject them to personal jurisdiction in Texas, including selling, manufacturing and

distributing rifles through its distributors and sales force.  The Remington Defendants knew that the subject product could and would arrive and be used in Texas.

Plaintiff, in both of her capacities, has incurred damages in an amount exceeding the minimum jurisdictional limit of this Court.

Venue is proper in this Court because the Landowner Defendants have their principal offices in Dallas County, Texas.

### FACTUAL BACKGROUND

On November 7, 2010, Clinton Colgin was killed when a Remington Model 700 rifle (hereinafter the "Subject Rifle" or "Remington Model 700 rifle") discharged without a trigger pull.  At the time of the incident, Clinton Colgin and William Hullem were in the cab of a pickup truck on a ranch near Palo Pinto, Texas.  One or more of the Landowner Defendants owned the ranch.  Further, at the time of the incident, William Hullem was employed by one or more of the Landowner Defendants and was acting within the course and scope of his employment.  Clinton Colgin is survived by his wife, Bianca Elliott Colgin, and one daughter, Arden Louise Colgin, a minor, who is the natural child of Clinton Colgin and Bianca Elliott Colgin.

The Remington Defendants manufactured, marketed, and distributed the Subject Rifle, and its component parts, including its action, fire control system, and safety.  A picture of the Subject Rifle is included below:



At the time of the incident, the Subject Rifle contained an unreasonably dangerous and defective fire control system that was known by Remington to fire without a trigger pull under various scenarios. "Substantial evidence reveals that a portion of the trigger mechanism of these rifles, known as the "Walker fire control," is defective and can cause the rifle to fire without a trigger pull." Order Granting Barber's Motion to Intervene (Dkt. 424; February 6, 2012), *Aleksich v. Remington*, 2:91-cv-00005-RFC (Dist. Montana). Defendants have designed and incorporated a new trigger mechanism that is safe, and Remington installs the new mechanism in all of its new consumer rifles.

The Walker Fire Control System, which was the trigger mechanism included in the Subject Rifle, was patented and assigned to Remington Arms Company in 1948. Remington first heard complaints from the field in the 1940s regarding the Model 721-722 Rifle, the predecessor of the Model 700 which contained essentially the same fire control mechanism. The complaints centered on discharge upon safety release and also upon closing of the firing bolt.

Remington explored the redesign of the trigger mechanism in both the 1940s and in the 1970s. Each time, it determined that comprehensive redesign was cost prohibitive. An internal Remington document from 1977 discussed problems with the Model 700. This information was not disseminated to the general public.

A Remington memorandum from 1981 recommended redesign of the Model 700's fire control system (or trigger mechanism) for a price of 32 cents per gun. Remington, however, opted to continue with the unreasonably dangerous design.

Remington described a redesign of the Model 700's existing fire control system in an internal memorandum in 1985. That redesign was not implemented.

A Remington document from 1990 red-flagged the alarmingly large number of Model 700 Rifles being returned to the factory due to accidental discharges. A Remington document from 1993 indicated that Remington, were it to adopt a new design, would have to come up with a readily defensible reason for the departure from the previous design, implying that the company knew of, but did not want to publically admit, the existence of the defect.

In 1995, Remington indicated that it desired to eliminate the "Fire on Safety Release" malfunction and touted a redesign. Yet, Remington questioned whether it made financial sense to implement the new design in an internal document also from 1995. Nonetheless, various internal Remington documents, dated well before the date of the subject incident, clearly describe the defects that cause the unintended discharge events and explain the need to redesign the Model 700 fire control mechanism.

Remington has often advertised that its firearms will last for generations:



Plaintiff in this case specifically pleads that Remington has repeatedly represented to the public on numerous occasions at or near the time of manufacture and sale of the subject rifle, before the manufacture and sale of the subject rifle, and after the manufacture and sale of the subject rifle, that Remington firearms, including its bolt-action rifles, will last a "lifetime", will last for "generations", or words and representations to that effect.

**FIRST CAUSE OF ACTION AGAINST THE REMINGTON DEFENDANTS**
**(Strict Products Liability)**

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. At all relevant times, the Remington Defendants were engaged in the business of designing, manufacturing, assembling, testing, inspecting, distributing, and selling firearms, and in this regard, did design, manufacture, assemble, test, inspect, distribute, sell, and place into the stream of commerce the Remington Model 700 rifle, including the Subject Rifle, knowing and expecting that the Rifle would be used by consumers, and around members of the general public in the State of Texas.

On November 7, 2010, the Subject Rifle and its component parts, including the trigger mechanism, were being operated and used for the purpose and in the manner for which they were designed, manufactured, assembled, tested, inspected, serviced, distributed, sold and intended to be used, and in a manner foreseeable to the Remington Defendants and for which adequate and safe instructions and warnings were required to be issued.

Prior to and on November 7, 2010, including when the Subject Rifle left the control of the Remington Defendants, the Subject Rifle and its component parts, including the trigger mechanism, was unreasonably dangerous, not suitable for its intended purpose, and unsafe by reason of the Remington Defendants' defective design, manufacture, assembly, testing, inspection, service, distribution and sale of the Subject Rifle and its component parts, and because the Subject Rifle was sold and distributed without adequate instructions and/or warnings regarding its defective characteristics.

Defects in the design, manufacture, assembly, instructions, manuals and warnings, testing, inspection, service, distribution and sale of the Subject Rifle and component parts, including but not limited to the Subject Rifle's propensity to fire without a trigger pull in

---

instances including safety release and bolt closure, caused the Subject Rifle to fire without a trigger pull, resulting in the death of Clinton Colgin. Neither Colgin nor William Hullem had knowledge of this defective condition and neither had reason to suspect that the Subject Rifle was unreasonably dangerous prior to the unexpected discharge. The Remington Defendants, however, knew, or in the exercise of ordinary care should have known, of the Remington Model 700 rifle's propensity to unexpectedly discharge without pulling the trigger

By reason of the foregoing, the Remington Defendants are strictly liable for the damages sustained by plaintiffs.

As a result of the death of Clinton Colgin, plaintiffs and plaintiffs' decedent have sustained damages and are entitled to recover all fair and just compensatory damages allowed by law, including pain and suffering and mental anguish of plaintiffs' decedent, loss of future earnings of the decedent, loss of support, future contributions and pecuniary benefits, loss of services, loss of inheritance or prospective accumulations, parental care, attention, advice, maintenance, counsel, grief and mental anguish, intellectual and moral training, guidance and education; and decedent's survivors were caused to incur funeral and burial expenses; loss of personal property and other damages, and are therefore entitled to compensation.

### SECOND CAUSE OF ACTION AGAINST THE REMINGTON DEFENDANTS
### (Negligence)

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. On and before November 7, 2010, the Remington Defendants owed plaintiffs and plaintiffs' decedent a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection, servicing, distributing, sale and/or repair of the Subject Rifle and its component parts, including but not limited to the trigger mechanism. The Remington Defendants further owed

---

plaintiffs and plaintiffs' decedent a duty of care to warn of any condition regarding the Subject

Rifle and its component parts that could and did render the Subject Rifle unsafe.

The death of Clinton Colgin and resulting damages were proximately caused by the

negligence of the Remington Defendants by and through their officers, agents, employees,

servants and others under their employ and control, in that they breached their aforesaid duties

by carelessly failing to properly design, manufacture, assemble, test, inspect, service, distribute

and sell the Subject Rifle and its component parts, including but not limited to the trigger

mechanism.  The Remington Defendants further breached their duties by failing to detect,

correct and/or warn or instruct about the dangerous and unsafe characteristics of the Subject

Rifle.

Specifically, the Remington Defendants were negligent in one or more of the following

respects:

    a.  In designing a fire control with a "trigger connector;"
    b.  In designing a fire control with manufacturing tolerance build up;
    c.  In designing a fire control that failed to include preset engagement between the trigger connector and the sear;
    d.  In designing a fire control that was susceptible to the accumulation of debris, lubrication build up, and/or the accumulation of rust;
    e.  In designing a fire control that was susceptible to adjustment;
    f.  In designing a fire control that was susceptible to the presence of manufacturing burrs or debris;
    g.  In designing a fire control that will fire without a pull of the trigger;
    h.  In designing a fire control that will fire when the safety is shifted from the "safe" to the "fire" position;
    i.  In designing a fire control that will fire when the bolt is cycled;
    j.  In designing a fire control that will "jar off;"
    k.  In designing a fire control that uses improper materials, including "powdered metal" for the sear that are unusually susceptible to normal wear and tear;
    l.  In manufacturing a fire control that has burrs or manufacturing debris within the fire control;
    m.  In manufacturing a fire control without proper or adequate quality control procedures or checks;
    n.  In failing to warn users and handlers of the rifles of the potential for firings in the absence of a pull of the trigger;

o.  In failing to warn users and handlers of the risks and hazards of improper maintenance of the rifle;

p.  In failing to warn users and handlers of the risks and hazards of adjustment of the fire control;

q.  In failing to inform or advise users and handlers of the proper procedures for maintenance of the rifle; and

r.  In failing to inform or advise users and handlers of the proper procedures for adjustments to the fire control.

By reason of the foregoing, the Remington Defendants proximately caused the death of Clinton Colgin.

As a result of the death of Clinton Colgin, plaintiffs and plaintiffs' decedent have sustained damages and are entitled to recover all fair and just compensatory damages allowed by law, including pain and suffering and mental anguish of plaintiffs' decedent, loss of future earnings of the decedent, loss of support, future contributions and pecuniary benefits, loss of services, loss of inheritance or prospective accumulations, parental care, attention, advice, maintenance, counsel, grief and mental anguish, intellectual and moral training, guidance and education; and decedent's survivors were caused to incur funeral and burial expenses; loss of personal property and other damages, and are therefore entitled to compensation.

### THIRD CAUSE OF ACTION AGAINST THE REMINGTON DEFENDANTS
### (Breach of Warranty)

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. Prior to November 7, 2010, the Remington Defendants expressly and/or implicitly warranted and represented that the Subject Rifle and component parts, including but not limited to the trigger mechanism, were of merchantable quality, fit and safe for the purposes for which it was designed, manufactured, assembled, tested, serviced, distributed, sold, intended to be used, and was used, and that the instructions, manuals and warnings which had been issued were adequate and safe, and further that the Subject Rifle and its component parts,

---

including the trigger mechanism, were free from defects.

The Remington Defendants breached said express and implied warranties in that on November 7, 2010 the Subject Rifle and component parts, including but not limited to the trigger mechanism, was not of merchantable quality, fit and safe for the purposes for which it was designed, manufactured, assembled, tested, serviced, distributed, sold, intended to be used, and was used, and the instructions, manuals and warnings which had been issued were not adequate and safe, but were defective.

By reason of the foregoing, the Remington Defendants proximately caused the death of Clinton Colgin.

As a result of the death of Clinton Colgin, plaintiffs and plaintiffs' decedent have sustained damages and are entitled to recover all fair and just compensatory damages allowed by law, including pain and suffering and mental anguish of plaintiffs' decedent, loss of future earnings of the decedent, loss of support, future contributions and pecuniary benefits, loss of services, loss of inheritance or prospective accumulations, parental care, attention, advice, maintenance, counsel, grief and mental anguish, intellectual and moral training, guidance and education; and decedent's survivors were caused to incur funeral and burial expenses; loss of personal property and other damages, and are therefore entitled to compensation.

### FOURTH CAUSE OF ACTION AGAINST THE REMINGTON DEFENDANTS
#### (Punitive and/or Exemplary Damages)

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. Despite a defect that has been known to Remington for decades—a defect resulting in approximately 10,000 documented complaints of unintended discharge, many jury verdicts finding that the design is defective (including at least 2 findings of gross negligence on the part of Remington), and millions of dollars in settlements paid—unsuspecting users still hunt today

---

with a rifle that will fire before the trigger is pulled.

Remington redesigned its fire control mechanism, but perceived financial ruin prevents Remington from recalling millions of rifles it knows are defective. This "profits over people" or "profits over safety" mentality is exactly the conduct that exemplary damages are designed to prevent.

Over 100 injured individuals have sued or made claims against Remington over the same defective design, and several juries, including at least two federal court juries, have found Remington's fire control to be defective. As early as January 25, 1990, an internal Remington memo reveals:

> "The number of Model 700 rifles being returned to the factory because of alleged accidental firing malfunctions is constantly increasing. 170 were returned to Product Service for examination in 1989 with various accidental firing complaints. To date this year, 29 have been returned."

Ignoring approximately ten thousand customer complaints, however, Remington refuses to recall its rifles or warn its customers.

Remington's Model 710, which uses the Walker fire control, was introduced in 2001. Even though the 710 has only been on the market for about eight years, Remington has already received hundreds of complaints of unintended discharge, mirroring the complaint history of the Model 700.

Remington's defective trigger mechanism uses an internal component called a "connector"—a design component not used by any other rifle manufacturer. The connector floats on top of the trigger body inside of the gun, but is not physically bound to the trigger in any way other than spring tension. The connector cannot be seen or controlled by the gun handler. When the trigger is pulled, the connector is pushed forward by the trigger, allowing the sear to fall and the rifle to fire.

The proper position of the connector under the sear requires an overlap—or "engagement"—of only approximately 25/1000ths of an inch (half the width of a dime or eight human hairs).  But because the connector is not bound to the trigger, during the recoil action after each firing of the rifle, the connector separates from the trigger body several times and creates a gap between the two parts.  This separation is recorded in Remington's own high-speed video footage of the fire control during discharge.  Any dirt, debris or manufacturing scrap can then become lodged in the space created between the connector and the trigger, preventing the connector from returning to its original position.

Remington's own experts have admitted the existence of this dangerous condition:

Q.    From a performance standpoint, the trigger connector, by the time the Model 710 was introduced, did nothing to truly enhance performance.

A.    I think that's true.

Q.    Are there any circumstances, in your judgment or experience, depending upon, you know, again, what other factors may be at play, where the trigger connector does increase the risks or the safety concerns with use of the Walker fire-control system?

A.    It theoretically adds one more point at which you could put in debris and prevent the connector from returning underneath the sear, and that is between the trigger and the connector.

Q.    Let me see if I understand what you just said. On a theoretical level, the trigger connector does present a moving part that under certain circumstances could result in debris getting between the trigger connector and the trigger body, correct?

A.    Right.

Deposition of Remington liability expert Seth Bredbury, *Williams v. Remington*.

When enough displacement occurs, the connector will no longer support the sear (either no engagement is present, or insufficient engagement is present) and the rifle will fire without the trigger being pulled.  This can occur in a variety of ways including when the safety is

released, when the bolt is closed, or when the bolt is opened. These unintended discharges occur so frequently that Remington actually created acronyms for internal use (Fire on Safe Release—"FSR"; Fire on Bolt Closure—"FBC"; Fire on Bolt Opening—"FBO"; and Jar Off—"JO"). The various manifestations notwithstanding, all of the unintended discharges result from the same defective condition—the susceptibility of the connector to be displaced from its proper position. Even one of the designers believes housing of the fire control parts is incorrectly designed.

When questioned about this susceptibility shown in Remington's own high-speed video footage, Remington engineer Michael Keeney offered the following:

Q.   In those frames, does the connector appear to be separated from the trigger body?

A.   Yes.

Q.   And if debris is inside the housing, that would provide an opportunity for debris to come between the connector and the trigger body; correct?

A.   That is correct.

Deposition of Remington engineer Michael Keeney, *Williams v. Remington.*

Derek Watkins, another Remington engineer, explained that this defect could lead to a dangerous situation:

Q.   If the trigger doesn't return for whatever reason to full engagement. . . , that is not safe; would you agree with me? Because the gun is now more susceptible --

A.   It is more—it is more sensitive, yes; it is more sensitive.

Q.   It is more sensitive to forces that would jar the rifle in such a way for that engagement, basically, for the trigger no longer to be underneath the sear and the gun to discharge?

A.   Yes.

Deposition of former Remington engineer Derek Watkins, *Williams v. Remington.*

---

PLAINTIFF'S ORIGINAL PETITION                                                                    PAGE 13

James Ronkainen, another Remington engineer, also admits that failure of the connector to properly engage leads to a dangerous condition:

> Q. One common factor in a fire on safe-release and a theoretical firing on bolt-closure is that the connector is not in its appropriate condition — position; correct?
>
> A. Yes. It is unable to support the sear.

Deposition of Remington engineer James Ronkainen, *Williams v. Remington*.

This dangerous condition caused Remington to embark on redesign efforts many times in the 1980's and 1990's. The goal of these efforts was to eliminate the defect:

> Q. The goal while you were there was to — is to achieve a design that did not result in a fire on safety-release; is that correct?
>
> A. The design was to eliminate any type of-- any type of debris or any type of firing from that standpoint. Fire on bolt-closure, yeah, we did-- we definitely did not want that to happen.

Deposition of former Remington engineer Derek Watkins, *Williams v. Remington*.

When Remington again contemplated a recall of the Model 700 rifle (and similar firearms) in the mid-nineties, Kenneth D. Green, Manager of Technical & Consumer Services, drafted a forthright warning letter to owners of Remington rifles, which included the following language (emphasis in original):

> "This safety notice is being sent to be sure you understand that if your Model 700, Model Seven or Model 40X rifle is loaded, the gun may accidentally fire when you move the safety from the "safe" position to the "fire" position, or when you close the bolt."

Mr. Green sent the draft warning to Remington's Bob Lyman for approval. Mr. Lyman did not approve the draft. Instead, he wrote in the margin to the left of the above language, "Needs to be rewritten; too strong." Mr. Lyman, likely speculating that the language would hurt sales or confirm Remington's knowledge of the defect, ensured that Remington's customers

---

never received the warning.

Remington's defective fire control also could have been redesigned to eliminate the harm or danger very inexpensively. Several companies sell connector-less replacement triggers for the Model 700. There is no valid engineering reason why the successfully utilized connector-less designs could not have been used by Remington in its Model 700 and 710.

Remington has recently removed the connector for some of its Model 700 rifles with a newly designed trigger mechanism, the X-Mark Pro. That design was completed in 2002, before the incident in question. This safer design would have prevented the death of Clinton Colgin. But Remington chose to continue installing its prior design. Even Remington's President and CEO, Thomas L. Millner, agreed in his 2007 deposition that the X-Mark Pro is a safer design (Question: "Did [Remington] make a safer fire control with the X-Mark Pro?" Answer: "Yes, I believe so.").

Not only did Mr. Millner admit that the design is safer, he admits that the new design prevents the rifle from firing upon release of the safety (Question: "And this new design precludes [fire on safety release] from occurring, true?" Answer: "True."). Finally, he admits that the old design—the design placed into the rifle that killed Clinton Colgin even after Remington had the new design—does not have safety features precluding fire on safety release (Question: "And that's the fire control that does not have the safety features that preclude the fire on safe release, true?" Answer: "That's correct."). Simply put, Remington's new design would have prevented this accident. But Remington took no action to retrofit the new fire control into the rifle that killed Clinton Colgin, nor did Remington warn the public.

Jury verdicts and appellate court opinions provide a succinct account of Remington's long-standing knowledge of its defective fire control. In *Lewy v. Remington,* the Eighth Circuit

upheld a finding of punitive damages against Remington in 1985:

> We hold that there was sufficient evidence from which the jury could find that Remington knew the M700 was dangerous. The following evidence was before the jury: complaints from customers and gunsmiths that the Model 700 would fire upon release of safety, some of these complaints dating back as far as the early 1970s (footnote text in opinion omitted); Remington's own internal documents show that complaints were received more than two years before the Lewy rifle was produced; Remington created a Product Safety Subcommittee to evaluate M700 complaints and on two occasions decided against recalling the M700; and Remington responded to every customer complaint with a form letter that stated that they were unable to duplicate the problem, that the customer must have inadvertently pulled the trigger and that Remington could not assume liability for the discharge.

> We believe that in viewing this evidence, and permissible inferences, in the light most favorable to the Lewys a jury could reasonably conclude that Remington was acting with conscious disregard for the safety of others. Remington maintains that their actions in investigating and responding to customer complaints and in creating the Product Safety Subcommittee to study the customer complaints reflect their good faith and sincerity in dealing with the M700. However, another permissible view to be drawn from all of this evidence may be that Remington was merely "gearing up" for a second round of litigation similar to the litigation involving the M600 which resulted in the ultimate recall of the M600. Remington's Product Safety Subcommittee concluded that of approximately two million M700s held by the public about 20,000 of them may have a potential defect (footnote omitted). A recall was not pursued because of the relatively small number of rifles that may have the defective condition. *See, e.g., Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 613, 620 (8th Cir.1983) ("[I]n determining whether a manufacturer has a duty to warn, courts inquire whether the manufacturer knew that there were even a relatively few persons who could not use its product without serious injury, and whether a proper warning would have helped prevent harm to them."). Thus, the jury may have concluded that rather than suffer the expense of a recall, Remington would rather take their chances that the 20,000 potentially dangerous M700 rifles held by the public will not cause an accident. Such a view, if true, would certainly establish that Remington acted with conscious disregard for the safety of others.

On March 24, 1992, The United States Court of Appeals, Ninth Circuit, affirmed a jury

verdict of $724,000 in a case alleging discharge on bolt closure. *Campbell v. Remington Arms*

*Co.,* 1992 WL 54928, *2 (C.A. 9 (Alaska) 1992) (unpublished opinion).

On December 31, 1992, the Texas Supreme Court, in *Chapa v. Garcia*, 848 S.W.2d 667,

671-74 (Tex. 1992), specifically describes Remington's fire control as "defective":

> Luis Chapa clearly established the relevance of and his need for the documents, by offering evidence demonstrating that the NBAR program had as its goal improvement of the defective fire control on the Model 700 and that Chapa faced a significant time gap in the record as to Remington's *knowledge* of the defect (footnote omitted).  Included in Chapa's showing was:
>
>> • a 1985 Remington memorandum describing the NBAR program as one to design a "replacement for the Model 700"
>>
>> • another Remington memorandum declaring that an improved fire control be installed in the Model 700 no later than October 1982 "to put us in a more secure position with respect to product liability"
>>
>> • a memorandum evidencing an increase of $130,000, in early 1981, in the research budget for development of an improved Model 700 fire control
>>
>> • proof of the abrupt discontinuation of further research into the fire-control system of the Model 700 after December 1981 coincident in time with the commencement of the NBAR program
>>
>> • deposition testimony that models of new, improved fire controls had been designed and assembled as part of NBAR, that prototypes had been built and tested, and that the NBAR fire controls could be retrofitted to the Model 700.
>>
>> • Remington's admission that the fire control alternatives under consideration in the NBAR program and those it claims were geared solely to the Model 700 "attempt to execute the same *idea* (simultaneous blocking of the sear and trigger)" (footnote omitted).
>> • Remington's concession that the fire-control system research adopted the name "NBAR" in "late 1980 or 1981," about the time of the substantial increase in research funds for the Model 700 fire-control system.
>>
>> • Remington's admission that "NBAR components which are or have been under consideration include a ... different fire control."
>>
>> • Statements by Remington that NBAR information has relevance to the relative safety of its models compared to its competitors and the possible need for warnings.

---

Then, on May 7, 1994, a Texas jury rendered a verdict after Glenn Collins lost his foot to a Model 700 accidental discharge (Fire on Safety Release allegation). Not only did the jury find that the fire control was defective, it also awarded $15,000,000 in exemplary damages. The total verdict, which was in excess of $17 million, sent a clear message to Remington—past and *certainly* future use of the defective fire control is unacceptable.

It is difficult to ascertain exactly how many times Remington has embarked on designing a new Model 700 fire control. It clearly tried with the "NBAR" program, and it clearly tried on several occasions in the 1990's, and it clearly again tried beginning in approximately the year 2000.

By 1995, Remington openly acknowledged the need to "fix" the fire control. As its documents show, it decided to "[e]liminate 'Fire on Safety Release' malfunction." Before work continued on a new fire control, however, Remington's Fire Control Business Contract (January 27, 1995) outlined the project and foreshadowed its end:

> The goal is to provide a fire control that "feels" the same to our customers yet provides additional safeguards against **inadvertent or negligent discharges**.
>
> . . .
>
> The purpose of the redesign of the fire control is to reduce the number of parts required, lower cost and to add design characteristics that **enhance the safety attributes** of our firearms.

The next paragraph, however, laments that safety "is not considered a highly marketable feature." The next full paragraph in the document speaks for itself. Under "<u>Financial Analysis</u>," appears this telling quote:

> This is where the rubber meets the road. Is this project worth doing? What are the minimum forecasts to insure profitability and does our pricing structure support these expected profits?

The project to "enhance the safety attributes of our firearms" is only "worth doing" if

---

Remington can "insure profitability." True to form, the M700 Improvements Program was cancelled on August 28, 1998.

Remington has repeatedly made a clear economic choice against recalling the Model 700. But the Model 710 was to be a new rifle. In 1997, and against this sordid and costly fifty-year historical backdrop, Remington faced an important but easily answered question regarding the new low cost bolt-action rifle it intended for beginner users: What fire control should Remington use?

When embarking on the design of the Model 710, Remington originally elected against the use of the Model 700 fire control, which contains the connector. Instead, Remington embarked on the design of a "connectorless" fire control.

Derek Watkins, a Remington Engineer, designed a connector-less fire control based on the work performed during the cancelled M700 improvements program. Watkins touted the benefits of his new design within Remington.

Once again, Remington had a new and safe design. But the design was allegedly too expensive to implement, and project spending was put on hold in May 1998. Even though Watkins design was favored within Remington, the engineering department could not get approval for the economics of the project.

In August 1998, Watkins' safe design was abandoned due to an estimated cost increase. Motivated once again by the prospect of saving money and increasing its profit margin, Remington decided to pull the unsafe Model 700 fire control off the shelf and use it in the new Model 710 to eliminate development cost and time.

Remington is defiant in its reluctance to recall or stop using its fire control, a product that it knows is dangerous and that will kill or injury again, through no fault of the unsuspecting user.

The two or more "replacement campaigns" (recalls) contemplated by Remington were seen as too expensive. Remington has elected to defend its product in court rather than embark on a recall that would likely save lives.

No government agency can force Remington to recall its product, and Remington has made its internal customer service advisors aware of that fact. It is only through the court system that Remington may be made to answer for its product.

Remington has consistently elected against a recall of its dangerous product for financial reasons, even though it is has designed a new product that removes the problematic connector and eliminates the danger. Even Remington's past President admits that the new design is safer. This is improper, and Remington should recall all of its rifles containing a "Walker"-based fire control. Until that time, Plaintiffs in this action seek punitive and/or exemplary damages against Remington for its willful acts of malice and gross negligence.

### FIRST CAUSE OF ACTION AGAINST THE LAND OWNER DEFENDANTS
#### (Negligence / Respondeat Superior)

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. At the time of the accident, William Hullem was employed by one or more of the Landowner Defendants. Further, at the time of the accident, Hullem was in the course and scope of his employment and under the control of one or more of the Landowner defendants. Therefore, the Landowner Defendant(s) employing and controlling Hullem are vicariously liable for the acts and omissions of Hullem.

At the time of the accident, Hullem and the Landowner Defendants owed plaintiffs and plaintiffs' decedent a duty to exercise reasonable care in the handling and use of the defective Subject Rifle. The death of Clinton Colgin and resulting damages were proximately caused by the negligence of the Landowner Defendants, including by and through Hullem, in that they

---

PLAINTIFF'S ORIGINAL PETITION PAGE 20

breached their aforesaid duties by carelessly failing to properly handle and use the defective Subject Rifle, either with or without knowledge that it could possible fire without a trigger pull.

By reason of the foregoing, the Landowner Defendants proximately caused the death of Clinton Colgin.

As a result of the death of Clinton Colgin, plaintiffs and plaintiffs' decedent have sustained damages and are entitled to recover all fair and just compensatory damages allowed by law, including pain and suffering and mental anguish of plaintiffs' decedent, loss of future earnings of the decedent, loss of support, future contributions and pecuniary benefits, loss of services, loss of inheritance or prospective accumulations, parental care, attention, advice, maintenance, counsel, grief and mental anguish, intellectual and moral training, guidance and education; and decedent's survivors were caused to incur funeral and burial expenses; loss of personal property and other damages, and are therefore entitled to compensation.

## SECOND CAUSE OF ACTION AGAINST THE LAND OWNER DEFENDANTS
### (Negligent Activity)

Plaintiffs hereby incorporate by reference all above allegations as if fully set forth herein. At the time of the accident, the Landowner Defendants owed plaintiffs and plaintiffs' decedent a duty to exercise reasonable care in controlling the activities that took place on their land. The Landowner Defendants had a further duty to prevent and/or preclude negligent activities from occurring on their land where such activities posed a risk of bodily harm to others, such as Clinton Colgin.

The death of Clinton Colgin and resulting damages were proximately caused by the negligence of the Landowner Defendants, in that they breached their aforesaid duties by carelessly failing to properly control the activities taking place on their land and by not preventing and/or not precluding activities and conduct that could cause bodily harm to other

people on their land, such as Clinton Colgin. Specifically, among other things, the Landowner

Defendants had actual and/or constructive knowledge that guns, such as the defective Subject

Rifle, were being handled, used and/or fired from the cabs of pickup trucks, by people, including

their own employees, and took no action to prevent or preclude such activities. The Landowner

Defendants had control over the activities and practices that took place on their land and could

have taken steps to ensure that such activities would not occur on their land.

By reason of the foregoing, the Landowner Defendants proximately caused the death of

Clinton Colgin.

As a result of the death of Clinton Colgin, plaintiffs and plaintiffs' decedent have

sustained damages and are entitled to recover all fair and just compensatory damages allowed by

law, including pain and suffering and mental anguish of plaintiffs' decedent, loss of future

earnings of the decedent, loss of support, future contributions and pecuniary benefits, loss of

services, loss of inheritance or prospective accumulations, parental care, attention, advice,

maintenance, counsel, grief and mental anguish, intellectual and moral training, guidance and

education; and decedent's survivors were caused to incur funeral and burial expenses; loss of

personal property and other damages, and are therefore entitled to compensation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief, jointly and severally, against both

the Remington Defendants and the Landowner Defendants:

A.    For general damages to compensate Plaintiffs for their damages;

B    For the reasonable value of past and future medical expenses incurred for the

accident-related care of Plaintiffs;

C.    For other general and special damages available under law;

---

D.    For punitive damages against Defendants to punish and deter Defendants, and

others similarly situated, from engaging in like conduct in the future;

E.    For Plaintiffs' cost of suit;

F.    For Plaintiffs' reasonable attorneys' fees as allowed by law; and

G.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ Jeffrey W. Hightower, Jr.
Jeffrey W. Hightower, Jr.
State Bar No. 00793951
William O. Angelley
State Bar No. 24001658

HIGHTOWER ANGELLEY LLP
4144 N. Central Expwy.
Suite 1230
Dallas, Texas 75204
Phone: 214.580.9800
Fax: 214.580.9804
Email: jeff@hightangel.com
Email: wil@hightangel.com

Parker P. Polan
State Bar No. 24060432
400 W. 14th St., Suite 100
Austin, Texas 78701
Phone: 512.472.8318
Fax: 512.472.2792
Email: parkerpolin@gmail.com

COUNSEL FOR PLAINTIFF



# THE STATE OF TEXAS

## CITATION

CAUSE NO. CC-12-01595-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

FILED
2012 MAR 19 AM II: 36
JOHN F WARREN
COUNTY CLERK
DALLAS COUNTY

TO:

**ROBERT M FARRELL**
**Address Unknown**

BIANCA ELLIOT COLGIN
*Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL, LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD
*Defendant(s)*

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County, Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas 75202.

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

**WITNESS: JOHN F WARREN,** Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By: _____
Vickie Johnson

_____ Deputy



---

**EXHIBIT A-2**

ATTY PU

## CITATION

**CC-12-01595-A**

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC;
SPORTING GOODS PROPERTIES, INC;
ROBERT M FARRELL; ROBERT M
FARRELL, LLC; ROBERT M FARRELL
DEVELOPMENT, LTD; ROBERT M FARRELL
FAMILY PARTNERSHIP #1, LTD; ROBERT M
FARRELL FAMILY PARTNERSHIP #2, LTD;
NORTH RIO VISTA, LTD, *Defendant(s)*

**SERVE:**

**ROBERT M FARRELL**
**Address Unknown**

**ISSUED THIS**
**13th day of March, 2012**

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

*Attorney for Plaintiff*
**JEFFREY W HIGHTOWER**
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

filed in

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLERK

## OFFICER'S RETURN

CC-12-01595-A   County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

No Known Address

Came to hand on the _____day of _____, 20____, at _____o'clock _____.m., and executed in _____ County, Texas by delivering to ROBERT M FARRELL, in person, a true copy of this Citation together with the accompanying copy of the ORIGINAL with the date and service at the following times and places to-wit:

| **Name** | **Date/Time** | **Place, Course and Distance from Courthouse** |
| --- | --- | --- |
| _____ | _____ | _____ |

And not executed as to the defendant(s),
_____

The diligence used in finding said defendant(s) being:
_____

and the cause or failure to execute this process is:
_____

and the information received as to the whereabouts of said defendant(s) being:
_____

**Fees:**

Serving Petition and Copy     $_____     _____, Officer

Total     $_____     _____, County, Texas

By:_____, Deputy

_____, Affiant

CAUSE NO. <u>CC-12-01595-A</u>

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | AT LAW NO. 1 |
| | § | |
| REMINGTON ARMS COMPANY, LLC, ET | § | |
| AL, | § | |
| **Defendant(s).** | § | DALLAS COUNTY, TEXAS |

## <u>AFFIDAVIT OF SERVICE</u>

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM,**
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at **10:14 AM, on Thursday, March 15, 2012,**
by delivering to the within named:

### ROBERT M FARRELL

In person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

**Joe Clewis**

Of:   **Dallas County**

By:

Authorized Person - SCH4129 - Exp 08/31/14

Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this /6th day of March, 2012.

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013

**Notary Public in and for The State of Texas**



**THE STATE OF TEXAS**

**CITATION**

CAUSE NO. CC-12-0195-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

TO:

ROBERT M FARRELL, LLC
8235 DOUGLAS AVE STE 815
DALLAS TX 75225

BIANCA ELLIOT COLGIN
*Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M
FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT
M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP
#2, LTD; NORTH RIO VISTA, LTD
*Defendant(s)*

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN
ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of
twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken
against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County,
Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas 75202.

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

WITNESS: JOHN F. WARREN, Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY
HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By _____, Deputy
Vickie Johnson



2012 MAR 19 AM 11: 35

JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

FILED

filed in

**EXHIBIT A-3**

---

**CITATION**

**CC-12-01595-A**

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY,
LLC; SPORTING GOODS
PROPERTIES, INC; ROBERT M
FARRELL; ROBERT M
FARRELL,LLC; ROBERT M FARRELL
DEVELOPMENT, LTD; ROBERT M
FARRELL FAMILY PARTNERSHIP
#1, LTD; ROBERT M FARRELL
FAMILY PARTNERSHIP #2, LTD;
NORTH RIO VISTA, LTD, *Defendant(s)*

**SERVE:**

ROBERT M FARRELL, LLC
8235 DOUGLAS AVE STE 815
DALLAS TX 75225

ISSUED THIS
13th day of March, 2012

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

Attorney for Plaintiff
JEFFREY W HIGHTOWER
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLERK

# OFFICER'S RETURN

CC-12-01595-A   County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

8235 DOUGLAS AVE STE 815
DALLAS TX 75225

Came to hand on the _____ day of _____, 20_____, _____ o'clock _____.m., and executed in _____ County, Texas by delivering to ROBERT M FARRELL,LLC inperson, a true copy of this Citation together with the accompanying copy of the ORIGINAL with the date and service at the following times and places to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| | | |

And not executed as to the defendant(s),

The diligence used in finding said defendant(s) being:

and the cause or failure to execute this process is:

and the information received as to the whereabouts of said defendant(s) being:

**Fees:**
Serving Petition and Copy    $_____    _____, Officer

Total   $_____    _____,County, Texas

By:_____, Deputy

_____, Affiant

CAUSE NO. <u>CC-12-01595-A</u>

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | AT LAW NO. 1 |
| REMINGTON ARMS COMPANY, LLC, ET | § | |
| AL, | § | |
| **Defendant(s).** | § | DALLAS COUNTY, TEXAS |

## <u>AFFIDAVIT OF SERVICE</u>

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM,**
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at 10:14 AM, on **Thursday, March 15, 2012,**
by delivering to the within named:

### ROBERT M FARRELL, LLC

By delivering to its' **Registered Agent, ROBERT M FARRELL**
Each, in person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

**Joe Clewis**

Of: **Dallas County**

By: _____
Authorized Person - SCH4129 - Exp 08/31/14

**Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this** 16th **day of March, 2012.**

_____
Notary Public in and for The State of Texas

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013



# THE STATE OF TEXAS
## CITATION

CAUSE NO. CC-12-01595-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

TO:

ROBERT M FARRELL DEVELOPMENT LTD
8235 DOUGLAS AVE STE 815
DALLAS TX 75225

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County, Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas 75202.

BIANCA ELLIOT COLGIN
*Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD
*Defendant(s)*

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

WITNESS: JOHN F. WARREN, Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By:
Vickie Johnson

_____, Deputy



filed in

## EXHIBIT A-4

---

ATTY PU

## CITATION
### CC-12-01595-A

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD, *Defendant(s)*

### SERVE:
ROBERT M FARRELL
DEVELOPMENT LTD
8235 DOUGLAS AVE STE 815
DALLAS TX 75225

ISSUED THIS
13th day of March, 2012

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

Attorney for Plaintiff

JEFFREY W HIGHTOWER
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLERK

FILED
2012 MAR 19 AM 11:30
JOHN F WARREN
COUNTY CLERK
DALLAS COUNTY

# OFFICER'S RETURN

CC-12-01595-A  County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

8235 DOUGLAS AVE STE 815
DALLAS TX  75225

Came to hand on the _____ day of _____, 20___, at _____ o'clock _____.m., and executed in _____ County, Texas by delivering to ROBERT M FARRELL DEVELOPMENT, LTD in person, a true copy of this Citation together with the accompanying copy of the ORIGINAL with the date and service at the following times and places to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|---|---|---|
| _____ | _____ | _____ |

And not executed as to the defendant(s),
_____

The diligence used in finding said defendant(s) being:

_____

and the cause or failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

**Fees:**

Serving Petition and Copy     $_____     _____, Officer

Total     $_____     _____ County, Texas

By:_____, Deputy

_____, Affiant

CAUSE NO. <u>CC-12-01595-A</u>

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | AT LAW NO. 1 |
| REMINGTON ARMS COMPANY, LLC, ET AL, | § | |
| | § | |
| **Defendant(s).** | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM,**
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at **10:14 AM,** on **Thursday, March 15, 2012,**
by delivering to the within named:

### ROBERT M FARRELL DEVELOPMENT LTD

By delivering to, **ROBERT M FARRELL**
Each, in person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

Of:     **Joe Clewis**

    **Dallas County**

By:     Authorized Person - SCH4129 - Exp 08/31/14

Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this _16th_ day of March, 2012.

Notary Public in and for The State of Texas

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013

FILED
2012 MAR 19 AM 11:36
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY



# THE STATE OF TEXAS

## CITATION

CAUSE NO. CC-12-01595-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

**FILED**

2012 MAR 19  AM 11: 36

JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

TO:

ROBERT M FARRELL FAMILY PARTNERSHIP #1 LTD
5235 DOUGLAS AVE STE 950
DALLAS TX 75225

BIANCA ELLIOT COLGIN
*Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M
FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT
M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP
#2, LTD; NORTH RIO VISTA, LTD
*Defendant(s)*

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN
ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of
twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken
against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County,
Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas 75202.

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

filed in

WITNESS: **JOHN F. WARREN,** Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY
HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By _____
Vickie Johnson               Deputy



## EXHIBIT A-5

---

**ATTY PU**

## CITATION

## CC-12-01595-A

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

VS.

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

REMINGTON ARMS COMPANY, LLC;
SPORTING GOODS PROPERTIES, INC;
ROBERT M FARRELL; ROBERT M
FARRELL,LLC; ROBERT M FARRELL
DEVELOPMENT, LTD; ROBERT M FARRELL
FAMILY PARTNERSHIP #1, LTD; ROBERT M
FARRELL FAMILY PARTNERSHIP #2, LTD;
NORTH RIO VISTA, LTD, *Defendant(s)*

SERVE:
ROBERT M FARRELL FAMILY
PARTNERSHIP #1 LTD
5235 DOUGLAS AVE STE 950
DALLAS TX 75225

ISSUED THIS
13th day of March, 2012

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

Attorney for Plaintiff

JEFFREY W HIGHTOWER
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLER

# OFFICER'S RETURN

CC-12-01595-A   County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC., ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

5235 DOUGLAS AVE STE 950
DALLAS TX 75225

Came to hand on the _____day of _____, 20_____, at _____o'clock _____.m., and executed in _____ County, Texas by delivering to ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD in person, a true copy of this Citation together with the accompanying copy of the ORIGINAL with the date and service at the following times and places to-wit:

**Name**                    **Date/Time**              **Place, Course and Distance from Courthouse**

_____      _____      _____

And not executed as to the defendant(s),

_____

The diligence used in finding said defendant(s) being:

_____

and the cause or failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

**Fees:**

Serving Petition and Copy        $_____        _____, Officer

Total     $_____                                _____, County, Texas

                                                By:_____, Deputy

                                                _____, Affiant

## CAUSE NO. CC-12-01595-A

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | AT LAW NO. 1 |
| | § | |
| REMINGTON ARMS COMPANY, LLC, ET AL, | § | |
| | § | |
| **Defendant(s).** | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM**,
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at **10:14 AM, on Thursday, March 15, 2012**,
by delivering to the within named:

### ROBERT M FARRELL FAMILY PARTNERSHIP #1 LTD

By delivering to its' **Registered Agent, ROBERT M FARRELL**
Each, in person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of this suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

**Joe Clewis**

Of:     **Dallas County**

By:     _____
        Authorized Person - SCH4129 - Exp 08/31/14

Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this _16th_ day of March, 2012.

_____
Notary Public in and for The State of Texas

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013



# THE STATE OF TEXAS
## CITATION

CAUSE NO. CC-12-01595-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

FILED

2012 MAR 19 AM 11: 36

JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL, DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD;
*Defendant(s)*

TO:

ROBERT M FARRELL FAMILY PARTNERSHIP #2 LTD
8235 DOUGLAS AVE STE 950
DALLAS TX 75225

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County, Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas. 75202.

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

WITNESS: JOHN F. WARREN, Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By 
Vickie Johnson
Deputy

---

# EXHIBIT A-6

---

## CITATION
### CC-12-01595-A

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

BIANCA ELLIOT COLGIN, *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD; *Defendant(s)*

**SERVE:**
ROBERT M FARRELL FAMILY
PARTNERSHIP #2 LTD
8235 DOUGLAS AVE STE 950
DALLAS TX 75225

**ISSUED THIS**
**13th day of March, 2012**

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

Attorney for Plaintiff
JEFFREY W HIGHTOWER
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

filed in

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLERK

## OFFICER'S RETURN

CC-12-01595-A   County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS
COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

8235 DOUGLAS AVE STE 950
DALLAS TX  75225

Came to hand on the _____ day of _____, 20___ at _____ o'clock _____.m., and executed in
_____ County, Texas by delivering to ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD in person, a
true copy of this Citation together with the accompanying copy of the ORIGINAL with the date and service at the following
times and places to-wit:

**Name**                    **Date/Time**                    **Place, Course and Distance from Courthouse**

_____         _____         _____

And not executed as to the defendant(s),

_____

The diligence used in finding said defendant(s) being:

_____

and the cause or failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

**Fees:**
Serving Petition and Copy          $_____          _____, Officer

Total    $_____          _____, County, Texas

                                  By:_____, Deputy

                                  _____, Affiant

## CAUSE NO. CC-12-01595-A

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| Plaintiff(s), | § | |
| VS. | § | AT LAW NO. 1 |
| | § | |
| REMINGTON ARMS COMPANY, LLC, ET | § | |
| AL, | § | |
| | § | |
| Defendant(s). | § | DALLAS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM,**
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at **10:14 AM, on Thursday, March 15, 2012,**
by delivering to the within named:

### ROBERT M FARRELL FAMILY PARTNERSHIP #2 LTD

By delivering to its' **Registered Agent, ROBERT M FARRELL**
Each, in person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

**Joe Clewis**

Of: **Dallas County**

By:

Authorized Person - SCH4129 - Exp 08/31/14

Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this 16th day of March, 2012.

_Charity N. Coleman_
**Notary Public in and for The State of Texas**

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013



# THE STATE OF TEXAS
## CITATION

CAUSE NO. CC-12-01595-A
COUNTY COURT AT LAW NO. 1
Dallas County, Texas

F I L E D

2012 MAR 19 AM 11: 36

JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

TO:

**NORTH RIO VISTA LTD**
**8235 DOUGLAS AVE STE 815**
**DALLAS TX 75225**

"You have been sued. You may employ an attorney. If you or your Attorney do not file a WRITTEN ANSWER with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL Petition, a default judgment may be taken against you." Your answer should be addressed to the clerk of County Court at Law No. 1 of Dallas County, Texas at the Court House of said County, 600 Commerce Street, Suite 101, Dallas, Texas 75202.

**BIANCA ELLIOT COLGIN**
*Plaintiff(s)*

VS.

**REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL, LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD**
*Defendant(s)*

filed in

said Court on the 9th day of March, 2012a copy of which accompanies this citation.

**WITNESS: JOHN F. WARREN,** Clerk of the County Courts of Dallas County, Texas. GIVEN UNDER MY HAND AND SEAL OF OFFICE, at Dallas, Texas, and issued this 13th day of March, 2012 A.D.

JOHN F. WARREN, Dallas County Clerk

By _____
Vickie Johnson

_____, Deputy



## EXHIBIT A-7

**ATTY PU**

## CITATION
**CC-12-01595-A**

IN THE COUNTY COURT OF DALLAS
County Court at Law No. 1
Dallas County, Texas

**BIANCA ELLIOT COLGIN,** *Plaintiff(s)*

VS.

REMINGTON ARMS COMPANY, LLC;
SPORTING GOODS PROPERTIES, INC;
ROBERT M FARRELL; ROBERT M
FARRELL, LLC; ROBERT M FARRELL
DEVELOPMENT, LTD; ROBERT M FARRELL
FAMILY PARTNERSHIP #1, LTD; ROBERT M
FARRELL FAMILY PARTNERSHIP #2, LTD;
NORTH RIO VISTA, LTD, *Defendant(s)*

**SERVE:**
**NORTH RIO VISTA LTD**
**8235 DOUGLAS AVE STE 815**
**DALLAS TX 75225**

**ISSUED THIS**
**13th day of March, 2012**

John F. Warren, County Clerk
By: Vickie Johnson, Deputy

Attorney for Plaintiff
JEFFREY W HIGHTOWER
HIGHTOWER LAW FIRM
4144 NORTH CENTRAL EXPRESSWAY
SUITE 1230
DALLAS TX 75231
214-580-9800

NO OFFICER'S FEES HAVE BEEN
COLLECTED BY DALLAS COUNTY CLERK

# OFFICER'S RETURN

CC-12-01595-A   County Court at Law No. 1

BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS
COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al

**ADDRESS FOR SERVICE:**

8235 DOUGLAS AVE STE 815
DALLAS TX  75225

Came to hand on the _____day of _____, 20____*_____, *at _____o'clock _____.m., and executed in
_____ County, Texas by delivering to NORTH RIO VISTA, LTD in person, a true copy of this Citation together
with the accompanying copy of the ORIGINAL with the date and service at the following times and places to-wit:

| Name | Date/Time | Place, Course and Distance from Courthouse |
|------|-----------|--------------------------------------------|
| _____ | _____ | _____ |

And not executed as to the defendant(s),
_____

The diligence used in finding said defendant(s) being:

_____

and the cause or failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

**Fees:**

Serving Petition and Copy        $_____      _____, Officer

Total    $_____

_____, County, Texas

By:_____, Deputy

_____, Affiant

CAUSE NO. <u>CC-12-01595-A</u>

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, ET AL, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | AT LAW NO. 1 |
| REMINGTON ARMS COMPANY, LLC, ET AL, | § | |
| | § | |
| **Defendant(s).** | § | DALLAS COUNTY, TEXAS |

## <u>AFFIDAVIT OF SERVICE</u>

Came to hand on **Tuesday, March 13, 2012 at 3:15 PM**,
Executed at: **8235 DOUGLAS AVE, STE 815, DALLAS, TX 75225**
within the county of **DALLAS** at **10:14 AM**, on **Thursday, March 15, 2012**,
by delivering to the within named:

### NORTH RIO VISTA LTD

By delivering to its' **Registered Agent, ROBERT M FARRELL**
Each, in person a true copy of this

### CITATION and PLAINTIFF'S ORIGINAL PETITION

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Joe Clewis** who after being duly sworn on oath states: "My name is **Joe Clewis**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

Of:     **Joe Clewis**

       **Dallas County**

By:

Authorized Person - SCH4129 - Exp 08/31/14

Subscribed and Sworn to by Joe Clewis, Before Me, the undersigned authority, on this 16th day of March, 2012.

CHARITY N. COLEMAN
Notary Public, State of Texas
My Commission Exp. 03-21-2013

Notary Public in and for The State of Texas

FILED
2012 MAR 19 AM 11: 36
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY



Filed
12 March 28 A9:25
John Warren
County Clerk
Dallas County

CAUSE NO. CC-12-1595-A

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, | § | IN THE COUNTY COURT |
| INDIVIDUALLY AND AS NEXT FRIEND OF | § | |
| ARDEN LOUISE COLGIN, A MINOR | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | AT LAW NUMBER ONE (1) |
| | § | |
| REMINGTON ARMS COMPANY, LLC., | § | |
| SPORTING GOODS PROPERTIES, INC., | § | |
| ROBERT M. FARRELL, ROBERT M. | § | |
| FARRELL, LLC, ROBERT M. FARRELL | § | |
| DEVELOPMENT, LTD., ROBERT M. | § | |
| FARRELL FAMILY PARTNERSHIP #1, | § | |
| LTD., ROBERT M. FARRELL FAMILY | § | |
| PARTNERSHIP #2, LTD., and NORTH | § | |
| RIO VISTA, LTD. | § | |
| | § | |
| **Defendants** | § | DALLAS COUNTY, TEXAS |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD. and NORTH RIO VISTA, LTD.**, Defendants in the above-entitled and numbered cause, and file this, their Original Answer to Plaintiff's Original Petition on file herein, and as grounds therefore, would respectfully show unto the Court the following:

I.

Defendants, **ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., and ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD.**, plead Rule 93 of the Texas Rules of Civil Procedure, as they are improper parties. These Defendants plead that there is a defect of parties and these Defendants are not liable in the capacity in which they have been sued.

II.

Defendants generally deny the allegations contained in Plaintiff's Petition and demand strict proof thereof.

## EXHIBIT A-8

III.

The incident complained of in Plaintiff's Petition was caused by negligence and carelessness on the part of the Plaintiff, and this was the sole proximate cause of Plaintiff's damages, if any.

IV.

Pleading in the alternative, if such be necessary, the Defendants would further show the Court that Plaintiff's damages, if any, were the result of an unavoidable accident.

V.

Pleading in the alternative, if such be necessary, the Defendants would further show the Court that Plaintiff assumed the risk involved.

VI.

Defendants state that this accident was caused by the action or actions of some third party, but through no negligence of these Defendants herein, and such acts or omissions of the third party were the sole cause and/or proximate cause.

VII.

The Defendants say that it owed the Plaintiff no duty under the facts and circumstances of the alleged accident claimed herein.

VIII.

The Defendants would further show unto the Court that the accident made the basis of this lawsuit was caused by the negligence of Plaintiff, and such negligence was the proximate cause of the injuries and damages, if any, complained of by the Plaintiff.

IX.

To the extent that the Plaintiff's medical expenses exceed the amount actually paid or incurred by or on behalf of the Plaintiff, the Defendants assert the statutory defense set forth in §41.0105 of the Texas Civil Practice & Remedies Code. Recovery of medical or healthcare expenses is limited to the amount actually paid or incurred by or on behalf of the Plaintiff.

X.

Further, to the extent the Plaintiff is seeking recovery for loss of earnings, loss of wages, loss of earning capacity and/or loss of contributions of pecuniary value, evidence of this alleged

loss must be presented in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law as required by §18.091 of the <u>Texas Civil Practice & Remedies Code</u>.

XI.

The Defendants invoke Rule 193.7 of the <u>Texas Rules of Civil Procedure</u> and give notice of their intention to use any and all documents produced in discovery responses as evidence in any pre-trial proceedings or the trial itself.

XII.

These Defendants further plead Chapter 75 entitled Limitations of Landowner's Liability of the <u>Texas Civil Practice & Remedies Code</u>. Specifically, these Defendants plead §75.001, §75.002, §75.003, and §75.004.

XIII.

A Judgment against these Defendants for punitive damages violates the Constitution of the United States and the Constitution of the State of Texas in each of the following respects:

a) Any award of punitive damages is arbitrary, unreasonable, excessive and in violation of this Defendants' rights to due process of law and equal protection of the law under the Fifth, Eighth and Fourteenth Amendment of the United States Constitution and Article I, §13 and §19 of the Texas Constitution.

b) Any award of punitive damages based upon vague and undefined standards of liability would violate the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Constitution of the State of Texas.

c) Any award of punitive damages resulting from the same course of conduct for which a Defendant has been or may be found liable for punitive damages in another action violates the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Constitution of the State of Texas.

d) The amount of punitive damages sought is unconstitutionally excessive and disproportionate to Defendants' conduct and thus violates the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Constitution of the State of Texas.

e) Any award of punitive damages based upon any standard of proof less than "clear and convincing" evidence violates the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Constitution of the State of Texas.

f)    Due process requires that punitive damages against the Defendants should be proved beyond a reasonable doubt under the Sixth Amendment to the Constitution of the United States.

g)    Since the Defendants fully complied with or exceeded all applicable public laws specifically defining reasonable safety and/or design standards, fundamental fairness and the due process clause of the Fourteenth Amendment of the United States Constitution and the due process clause of the Constitution of the State of Texas prohibits the recovery of punitive damages.

h)    A Judgment against these Defendants for punitive damages violates §4 of Article IV of the Constitution of the United States which guarantees to this state a republican form of government whereby a duly elected legislature and governor determine through the legislative process what acts, omissions, conduct or state of mind shall be punishable and the range of punishment that may be imposed; it being the function of the judicial branch to impose punishment subject to limitations established by the legislative and executive branches and the constitution and organic laws of the State.

XIV.

Alternatively, and without waiving the foregoing, these Defendants plead §41.003, §41.004, §41.006, §41.008, §41.009, §41.010 and §41.011 of the <u>Texas Civil Practice and Remedies Code</u>.

WHEREFORE, PREMISES CONSIDERED, the Defendants pray that upon trial hereof, they have Judgment and that it be adjudged that the Plaintiff take nothing by reason of her suit, and that the Defendants be discharged and go hence without delay and recover of and from the Plaintiff all the costs that they have so unduly expended, and for such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled, and for all of which they will ever pray.

Respectfully submitted,

**RAMSEY & MURRAY, P.C.**



By: _____

    Mark Ramsey
    SBOT No.16521700
    1500 CityWest Blvd., Suite 1000
    Houston, Texas77042-2354
    (713) 613-5400
    (713) 613-5414 (Fax)
Attorney for Defendants,
**ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD. and NORTH RIO VISTA, LTD.**

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 28th day of March, 2012, a true and correct copy of the above and foregoing instrument was mailed to the Plaintiff's Attorney, and that the original was promptly filed with the County Clerk's Office of Dallas County, Texas, together with this Certificate of Service.

_____
    Mark Ramsey



Filed
12 March 28 A9:28
John Warren
County Clerk
Dallas County

## CAUSE NO. CC-12-1595-A

| | | |
|---|---|---|
| BIANCA ELLIOTT COLGIN, | § | IN THE COUNTY COURT |
| INDIVIDUALLY AND AS NEXT FRIEND OF | § | |
| ARDEN LOUISE COLGIN, A MINOR | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | AT LAW NUMBER ONE (1) |
| | § | |
| REMINGTON ARMS COMPANY, LLC., | § | |
| SPORTING GOODS PROPERTIES, INC., | § | |
| ROBERT M. FARRELL, ROBERT M. | § | |
| FARRELL, LLC, ROBERT M. FARRELL | § | |
| DEVELOPMENT, LTD., ROBERT M. | § | |
| FARRELL FAMILY PARTNERSHIP #1, | § | |
| LTD., ROBERT M. FARRELL FAMILY | § | |
| PARTNERSHIP #2, LTD., and NORTH | § | |
| RIO VISTA, LTD. | § | |
| | § | |
| **Defendants** | § | DALLAS COUNTY, TEXAS |

## <u>JURY DEMAND</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD. and NORTH RIO VISTA, LTD.,** Defendants in the above entitled and numbered cause, in accordance with the provisions of Rule 216 of the <u>Texas Rules of Civil Procedure</u>, respectfully request a trial by jury.

# EXHIBIT A-9

Respectfully submitted,

**RAMSEY & MURRAY, P.C.**

By: _____

     Mark Ramsey
     SBOT No.16521700
     1500 CityWest Blvd., Suite 1000
     Houston, Texas77042-2354
     (713) 613-5400
     (713) 613-5414 (Fax)
Attorney for Defendants,
**ROBERT M. FARRELL, ROBERT M. FARRELL, LLC, ROBERT M. FARRELL DEVELOPMENT, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #1, LTD., ROBERT M. FARRELL FAMILY PARTNERSHIP #2, LTD. and NORTH RIO VISTA, LTD.**

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 28th day of March, 2012, a true and correct copy of the above and foregoing instrument was mailed to the Plaintiff's Attorney, and that the original was promptly filed with the County Clerk's Office of Dallas County, Texas, together with this Certificate of Service.

_____
         Mark Ramsey





**JOHN F. WARREN**
**Dallas County Clerk**
**George Allen Sr. Court Bldg.**
**600 Commerce St, Ste 101**
**Dallas, Texas  75202-3551**

STATE OF TEXAS

COUNTY OF DALLAS

    I, John F. Warren, Clerk of the County Court of Dallas County Court at Law No. 1, Dallas County, Texas do hereby certify that the foregoing is a true and correct copy of document in Cause No. CC-12-01595-A.

BIANCA ELLIOT COLGIN, **PLAINTIFF (S)**

**VS**

REMINGTON ARMS COMPANY, LLC; SPORTING GOODS PROPERTIES, INC; ROBERT M FARRELL; ROBERT M FARRELL,LLC; ROBERT M FARRELL DEVELOPMENT, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; NORTH RIO VISTA, LTD, **DEFENDANT (S)**

DOCKET SHEET filed on 9th day of March, 2012 in the Dallas County Court at Law No. 1, Dallas County, Texas.

**WITNESS MY HAND AND SEAL** of said Court this 9th day of April, 2012.

John F. Warren, County Clerk

By: _Sharon Jennings_
      Sharon Jennings, Deputy



**EXHIBIT A-10**

 

COUNTY COURT AT LAW NO. 1

# DOCKET SHEET
## CASE NO. CC-12-01595-A

| | | |
|---|---|---|
| BIANCA ELLIOT COLGIN, IND., AND AS NEXT FRIEND OF LOUISE COLGIN, A MINOR vs.REMINGTON ARMS COMPANY, LLC, SPORTING GOODS PROPERTIES, INC, ROBERT M FARRELL.et al | § § § § § | Location: **County Court at Law No. 1** Judicial Officer: **BENSON, D'METRIA** Filed on: **03/09/2012** |

---

### CASE INFORMATION

Case Type: **DAMAGES (NON COLLISION)**
Subtype: **NEGLIGENCE**

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | CC-12-01595-A |
| Court | County Court at Law No. 1 |
| Date Assigned | 03/09/2012 |
| Judicial Officer | BENSON, D'METRIA |

---

### PARTY INFORMATION

| | | *Lead Attorneys* |
|---|---|---|
| **PLAINTIFF** | **COLGIN, BIANCA ELLIOT** *IND., AND AS NEXT FRIEND OF* LOUISE COLGIN, A MINOR | **HIGHTOWER, JEFFREY W** *Retained* 214-580-9800(W) *HIGHTOWER LAW FIRM 4144 NORTH CENTRAL EXPRESSWAY SUITE 1230 DALLAS, TX 75231* |
| **DEFENDANT** | **FARRELL, ROBERT M** | **RAMSEY, MARK R** *Retained* 713-613-5400(W) *RAMSEY & MURRAY, PC 1500 CITY WEST BLVD., SUITE 1000 HOUSTON, TX 77042-2354* |
| | **NORTH RIO VISTA, LTD** *8235 DOUGLAS AVE, STE 815 DALLAS, TX 75225* | **RAMSEY, MARK R** *Retained* 713-613-5400(W) *RAMSEY & MURRAY, PC 1500 CITY WEST BLVD., SUITE 1000 HOUSTON, TX 77042-2354* |
| | **REMINGTON ARMS COMPANY, LLC** | |
| | **ROBERT M FARRELL DEVELOPMENT, LTD** *8235 DOUGLAS AVE., STE 815 DALLAS, TX 75225* | **RAMSEY, MARK R** *Retained* 713-613-5400(W) *RAMSEY & MURRAY, PC 1500 CITY WEST BLVD., SUITE 1000 HOUSTON, TX 77042-2354* |
| | **ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD** *5235 DOUGLAS AVE, STE 950* | **RAMSEY, MARK R** *Retained* |

TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE

COUNTY COURT AT LAW NO. 1

# DOCKET SHEET

## CASE NO. CC-12-01595-A

*DALLAS, TX 75225*

713-613-5400(W)
*RAMSEY & MURRAY, PC*
*1500 CITY WEST BLVD.,*
*SUITE 1000*
*HOUSTON, TX 77042-*
*2354*

**ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD**
*8235 DOUGLAS AVE STE 950*
*DALLAS, TX 75225*

**RAMSEY, MARK R**
*Retained*
713-613-5400(W)
*RAMSEY & MURRAY, PC*
*1500 CITY WEST BLVD.,*
*SUITE 1000*
*HOUSTON, TX 77042-*
*2354*

**ROBERT M FARRELL,LLC**
*8235 DOUGLAS AVE, STE 815*
*DALLAS, TX 75225*

**RAMSEY, MARK R**
*Retained*
713-613-5400(W)
*RAMSEY & MURRAY, PC*
*1500 CITY WEST BLVD.,*
*SUITE 1000*
*HOUSTON, TX 77042-*
*2354*

**SPORTING GOODS PROPERTIES, INC**

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|------|------------------------------|-------|
| 03/09/2012 | ORIGINAL PETITION (OCA - NEW CASE FILED) | |
| 03/09/2012 | JURY TRIAL DEMAND | |
| 03/12/2012 | ISSUE CITATION<br>Party:  DEFENDANT  FARRELL, ROBERT M;  DEFENDANT  ROBERT M FARRELL,LLC;  DEFENDANT  ROBERT M FARRELL DEVELOPMENT, LTD;  DEFENDANT  ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD;  DEFENDANT  ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD;  DEFENDANT  NORTH RIO VISTA, LTD<br>*PLACE IN ATTORNEY PU BOX* | |
| 03/13/2012 | **CITATION (SERVICE)**<br>FARRELL, ROBERT M<br>Unserved<br>ROBERT M FARRELL,LLC<br>Served: 03/15/2012<br>ROBERT M FARRELL DEVELOPMENT, LTD<br>Served: 03/15/2012<br>ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD<br>Served: 03/15/2012<br>ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD<br>Served: 03/15/2012<br>NORTH RIO VISTA, LTD<br>Served: 03/15/2012 | |
| 03/28/2012 | ORIGINAL ANSWER<br>Party:  DEFENDANT  FARRELL, ROBERT M;  DEFENDANT  ROBERT M FARRELL,LLC;  DEFENDANT  ROBERT M FARRELL DEVELOPMENT, LTD;  DEFENDANT  ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD;  DEFENDANT  ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD;  DEFENDANT  NORTH RIO VISTA, LTD | |
| 03/28/2012 | JURY TRIAL DEMAND | |
| 03/28/2012 | JURY DEMAND | |

TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN DALLAS
COUNTY CLERK'S OFFICE

*Printed on 04/09/2012 at 2:59 PM*

# COUNTY COURT AT LAW No. 1
# DOCKET SHEET
## CASE NO. CC-12-01595-A

| | |
|---|---|
| | Party: DEFENDANT FARRELL, ROBERT M; DEFENDANT ROBERT M FARRELL,LLC; DEFENDANT ROBERT M FARRELL DEVELOPMENT, LTD; DEFENDANT ROBERT M FARRELL FAMILY PARTNERSHIP #1, LTD; DEFENDANT ROBERT M FARRELL FAMILY PARTNERSHIP #2, LTD; DEFENDANT NORTH RIO VISTA, LTD |
| 07/13/2012 | **DISMISSAL HEARING** (9:00 AM) (Judicial Officer: BENSON, D'METRIA) |

| DATE | FINANCIAL INFORMATION |
|---|---|

**DEFENDANT** FARRELL, ROBERT M

| | |
|---|---:|
| Total Charges | 26.00 |
| Total Payments and Credits | 26.00 |
| **Balance Due as of  4/9/2012** | **0.00** |

**PLAINTIFF** COLGIN, BIANCA ELLIOT

| | |
|---|---:|
| Total Charges | 290.00 |
| Total Payments and Credits | 290.00 |
| **Balance Due as of  4/9/2012** | **0.00** |



TRUE AND CORRECT COPY OF ORIGINAL FILED IN DALLAS COUNTY CLERK'S OFFICE

Printed on 04/09/2012 at 2:59 PM



# EXHIBIT B

--------------------------------------------------------------------------

                        CASE # 10110702                    CLASS:
        RELATED CASE #                      TYPE OFFENSE: UNATTENDED
        OFFENSE/NATURE: UNATTENDED DEATH
                DISPATCH # 10110702                        UCR:
                    VICTIM: COLGIN,CLINTON JAMES
                            6060 VILLAGE BEND DRIVE 1901
                            DALLAS              TX75206   PHONE:
                RACE: W  ETHNIC: M  SEX: M  AGE:  28   DOB: 11181981
        SOC SEC NO:     -  -                   D-L NO: 00357583
    VICTIM EMPLOYMENT:


            COMPLAINANT: HULLUM,WILLIAM RAYMOND
                         PO BOX 1106
                         WEATHERFORD       TX         PHONE: 817 475 3762
                RACE: W  ETHNIC: N  SEX: M  AGE:  23   DOB: 11011987
        SOC SEC NO:     -  -                   D-L NO: 01982517

--------------------------------------------------------------------------
    REPORTED BY: HULLUM,WILLIAM   REPORTED TO: DISPATCH
    HOW REPORTED: PHONE            LOCATION: 597   MCMURREY RANCH RD
WEATHER CONDITION:                           GRAFORD
    PREMISE TYPE: RANCH           WEAPONS: RIFLE
OFFENSE DATE/TIME: 11/07/2010  0828    THRU:   /  /
    BODILY INJURIES? N            TAKEN TO: SWIFS
    TRANSPORTED BY: BCB           INJURIES: FATAL
        CONDITION: DECEASED
--------------------------------------------------------------------------
--------------------------------------------------------------------------
                M/O: HUNTING ACCIDENT

        UCR OFFENSE CLASS
        UCR OFFENSE SUB-CLASS A
        UCR OFFENSE SUB-CLASS B
        PROPERTY TYPE ARSON/STOLE
        GRID LOCATION HORIZ       N180    North of Hwy 180 to Hwy
        GRID LOCATION VERT.       WH16    West of Highway 16 to FM4
        PREMISES TYPE             6000    Pasture
        CIRCUMSTANCES             L011    All other
        WEAPON                    FIRA    Firearm
        ENTRY TYPE
        ENTRY LOCATION
        ENTRY WEAPON
        EXIT TYPE
        EXIT LOCATION
        PHYSICAL EVIDENCE         EV5     WEAPONS
        PRECINCT
        JURISDICTION
        RELATIONSHIP TO OFFENDER  ACQU    Acquaintance

    INVESTIGATOR: 2516/JORDAN        REPORT BY:
        CASE FILED? N            REPORT DATE: 11/07/2010
    UCR DISPOSITION:            UCR DISP DATE:   /  /
    SO DISPOSITION:             SO DISP DATE:    /  /
        MINORS ONLY? N       HOMICIDE SITUATION? N
            COMMENTS:


--------                    --------   -----------          --------
OFFICER SIGNATURE            DATE       APPROVED BY            DATE

Case 3:12-cv-01116-M Document 2 Filed 04/11/12 Page 85 of 106 PageID 87

```
--------------------------V I C T I M / W I T N E S S--------------------------
```

VICTIM NAME:   COLGIN,CLINTON JAMES        BEST PHONE:
     ADDRESS: 6060 VILLAGE BEND DRIVE 1901     OTHER PHONE:
   CITY/ST/ZIP: DALLAS          TX75206         DL #: 00357583    TX
RELATION OF VICTIM: VICTIM             SOC. SEC. NO.

RACE:       ETHNIC:      SEX:     DOB: 11/18/1981   HEIGHT:      -
HAIR:        EYES:         GLASSES?            AGE:   28   -   28
S-M-T? N      SKIN:      FACIAL HAIR?         WEIGHT:      -
      PLACE EMPLOYMENT:
      OTHER DESCRIPTION:

```
--------------------------V I C T I M / W I T N E S S--------------------------
```

WITNESS NAME: HULLUM,WILLIAM RAYMOND       BEST PHONE: 817 475 3762
     ADDRESS: PO BOX 1106               OTHER PHONE:
   CITY/ST/ZIP: WEATHERFORD        TX        DL #: 01982517    TX
RELATION OF VICTIM: FRIEND             SOC. SEC. NO.

RACE: W      ETHNIC: N     SEX: M   DOB: 11/01/1987   HEIGHT:      -
HAIR:        EYES:         GLASSES?            AGE:   23   -
S-M-T? N      SKIN:      FACIAL HAIR?         WEIGHT:      -
      PLACE EMPLOYMENT:
      OTHER DESCRIPTION:

**Office of the Sheriff**
**Palo Pinto County Sheriff's Office**
**Ira A. Mercer**

Offense: <u>10110702</u>

RESTRICTED NARRATIVE

### JORDAN/2516

On November 7, 2010 I, Chad Jordan Palo Pinto County Sheriff's Office, was dispatched to the McMurray Ranch located on FM 4 North in reference to an accidental discharge of a firearm that caused the death of Colgin, Clinton James (w/m 11/18/1981).

Upon my arrival to the McMurray Ranch, I went to the barn area located on the main road from the entrance to the Ranch. When I arrived at the barn I spoke with a subject identified as William Raymond Hullum (W/M 11/01/1987). I observed Mr. Hullum to be emotionally upset, crying. As I approached Mr. Hullum, he stated several times "it was an accident, it was an accident". I asked Mr. Hullum what took place and he stated he was driving through the field with Clinton Colgin in the passenger seat. As he was approaching a gate the two observed a pig in the pasture. Hullum advised Colgin was going to shoot the pig, but the gun would not discharge. Hullum advised Colgin was handing the gun over to Hullum when it discharged striking Colgin somewhere in the face. Hullum stated he heard the shot and instantly seen blood coming from Colgins face. Hullum stated he wasn't sure if he had grabbed the gun yet from Colgins when it discharged. Hullum then stated he jumped out of the truck and ran back to the barn area to get help.

I next went into the field and located the vehicle Hullum was operating. I observed a Ford F250 Pickup bearing TX license plate AR80314 parked near a wheat field at a cross section of fence. The pickup was still running with a rifle lying at the drivers' door and a white male sitting in the passenger seat with blood coming from his mouth and nose. Photographs were taken of the vehicle as well as the firearm, which was found to be a Remington model 700 .222 caliber rifle. The rifle was collected and transported to the Sheriff's Office. Baum-Carlock Baumgardner arrived and took possession of the body to transport it to the Southwest institute of forensic science (SWIFS) for autopsy at the request of Justice of the Peace Mitchell. The truck was left at the scene.

I next returned to the barns and made contact again with Hullum. A request was made for Hullum to come to the Sheriff's Office in order to obtain a statement from him. Hullum spoke with his father, William Stephen Hullum, and asked that he come at a later date after he spoke with an attorney.

On November 15, 2010 the Remington rifle was transported to the Texas Department of Public Safety Crime Laboratory located in Garland, Texas for examination. The exam requested was a function test. The results of this test were received on November 23, 2010 and showed the rifle to be operational with mis-feeding of the cartridge from magazine to chamber.

Armstrong/2521
Supplement Report

On 11/07/2010 I Deputy Casey Armstrong was contacted by Palo Pinto County Dispatcher Linda Calvin who stated that there had been a hunting accident at the Mc Murray Ranch. Linda stated that she was on 911 with a male subject Name Will who stated that his friend had shot himself and that I would know how to find them. Linda then gave me Will's phone number and stated that she was going to hang up the 911 line and that I needed to call Will.
 I contacted Will by phone and he stated that he and his friend were hunting near the river field and that the gun accidentally went off and shot his friend in the head. I then asked Will what his full mane was and he stated William Hullum. I asked Will who had been shot and he stated Clinton Colgin. I then advised Will if Clinton was dead and he stated yes. I asked Will where he was and he stated I'm running to the barn. I told Will to wait at the barn until I could get there.

 I then hung up the phone with Will and contacted Sgt. Chad Jordon and advised him of the incident. Jordon stated that he would head that way. I contacted Cpl. David Carlyle and advised him of the incident and he stated he would also head that way.

Upon arrival I observed that Sgt. Jordon and Cpl. Carlyle were already at the barn. I observed that Will was very upset and crying. Will came to me and stated I can't believe this happened, it was an accident. I advised Sgt Jordon that I knew Will personally and that I believed it would be best if I stayed with Will while he and Cpl. Carlyle conducted the investigation. Sgt. Jordon agreed and so I stayed at the barn with Will until the body had been removed from the ranch.

After the body was taken from the ranch Sgt. Jordon and Cpl. Carlyle arrived back at the barn, this is when Sgt. Jordon advised Will if he would come to the Sheriffs Office and give a statement of what had happened. Will stated that he would rather wait to give a statement until he had his lawyer present. Sgt. Jordon advised Will to contact Cpt. Craig Goen when he was ready to give a statement because he would be out of town for a few days.

**Supplement Report**
**10110702**
**Goen/2503**

On Friday November 19, 2010 William Raymond Hullum, W/M 11/01/1987, came to the
Palo Pinto County Law Enforcement Center for a formal statement. Hullum was not
under arrest and drove himself to the office. The interview was started at approximately
8:52 am. I asked Hullum to tell me what had happened the day of shooting. Hullum said
that they had seen a hog run in front of the truck and he exited the vehicle. Hullum said
that Colgin couldn't see the hog and was handing the rifle to Hullum, but first. Hullum
said that as he was getting the gun, it went off sticking Colgin in the face. I asked Hullum
if he touched the trigger and he said he didn't know, he could have. Hullum said that he
wasn't sure about touching the trigger.
The interview was video and audio recorded and a copy is attached to the case file.



# EXHIBIT C

# Texas Parks and Wildlife Department

# Hunting Accident and Incident Report Form



INTERNATIONAL HUNTER EDUCATION ASSOCIATION
**IHEA**
Responsible Hunting

☒ Fatal   ☐ Non-fatal   Report Number: _____
(will be assigned in Austin)

**INSTRUCTIONS TO GAME WARDEN:**   This form is to be used for reporting all accidents/incidents arising from hunting, firearm or bow related activities classified as follows:

A. An accident/incident resulting from the discharge of a firearm or bow while hunting, which causes the injury or death of any person(s).
B. An accident/incident while hunting, not involving the discharge of a firearm or bow, which causes the injury or death of any person(s).
C. Any other accidents/incidents resulting form the discharge of a firearm or bow, which causes the injury or death of any person(s), other than while hunting

NOTE: If possible, firearms, archery tackle, ammunition/powder or other equipment involved in a hunting accident/incident should be taken into the custody of the investigating officer for testing and/or evaluation.

Items marked with an asterisk are annually reported to the International Hunter Education Association, the organization responsible for compiling data from throughout North America.

I. *State/Province: **Texas**   Location: **McMurrey Ranch**
County/Parish: **Palo Pinto**   Date: **11-07-2010**   Time of Day: **8:28 AM**
Day of season: **1ST day of deer season**   Description of Injuries: **bullet wound to face fatal**

Location of injury on victim:
Please place an "O" over entry wound(s)   Please place an "x" over exit wound(s)

II. Land Ownership:   ☐ Public   ☒ Private
*Classification of Accident:(see above)   ☒ A   ☐ B   ☐ C
*Type of Casualty:   ☒ Fatal   ☐ Non-fatal
Report submitted by?   ☒ Shooter   ☐ Other:
Were shooter & victim members of same party?   ☒ Yes   ☐ No   ☐ N/A   Number of persons in party:   [2]
Relationship of victim(s) to shooter   ☐ Same   ☒ Friend   ☐ Relative   ☐ Other:
*Was injury or death self-inflicted?   ☐ Yes   ☒ No
*Type of Firearm   ☐ Shotgun*   ☒ Rifle*   ☐ Bow*   ☐ Handgun*   ☐ Muzzleloader*   ☐ Crossbow*   ☐ Unknown*   ☐ Other*
Ammunition   ☒ Factory   ☐ Reload   ☐ Military   Type of Ammunition   center fire   .200
Type of Action:   ☐ Hinge   ☒ Bolt   ☐ Lever   ☐ Semi-Auto   ☐ Full Auto   ☐ Pump   ☐ Revolver   ☐ Other
Miscellaneous:   Caliber:   .222   Draw Weight:   Make:   **Remington**   Model:   **700**   Serial #:
Sights used:   ☐ Open   ☒ Scope   ☐ Peep   ☐ Other
Safety Position:   ☐ On   ☒ Off   ☐ Unknown   ☐ No Safety   Tree Stand Harness Used   ☐ Yes   ☒ No
Tree Stand used:   ☐ Yes   ☐ No   ☐ Homemade   ☐ Factory
Type of Stand/Blind   ☐ Ground   ☒ Elevated   ☒ Vehicle   ☐ Ladder   ☐ Tripod

---

III. If self-inflicted, supply only SHOOTER information below, otherwise supply both SHOOTER and VICTIM information below.

| SHOOTER | VICTIM |
|---|---|
| Name: **Hulum, William Raymond** | Name: **Colgin, Clinton James** |
| Address: **PO Box 1106** | Address: **6060 Village Bend Dr 1901** |
| City: **Weatherford**  State/Province: **Tx**  Zip: **76086** | City: **Dallas**  State/Province: **TX**  Zip: **75206** |
| Telephone Number: **(817) 475-3762**  *Age: **23** | Telephone Number: **na**  *Age: **28** |
| ID State: **TX**  ID #: **01982517**  DOB: **11-01-87** | ID State: **TX**  ID #: **00357583**  DOB: **11-18-81** |
| Hunting License #: **799160025184**  HE#**759239**  ☐ N/A | Hunting License #: **393160014803**  HE#  ☐ N/A |
| Years hunting experience:  ☒ Unk  Sex: ☒ Male  ☐ Female | Years hunting experience:  ☒ Unk  Sex: ☒ Male  ☐ Female |
| Under the apparent influence of intoxicants or drugs? | Under the apparent influence of intoxicants or drugs? |
|   ☐ Yes  ☒ No  ☐ Unknown |   ☐ Yes  ☒ No  ☐ Unknown |
| Hunter Education Certified?  ☒ Yes  ☐ No  ☐ Unknown | Hunter Education Certified?  ☐ Yes  ☒ No  ☐ Unknown |
| State/Province Certified:  **Texas**  ☐ Unknown | State/Province Certified:  ☐ Unknown |
| *Game law violated?  ☐ Yes  ☐ No  ☐ Unknown | *Game law violated?  ☐ Yes  ☒ No  ☐ Unknown |
| If so, what section? | If so, what section? |
| Other laws violated? | Other laws violated? |
| Shooter involved in hunting related activity?  ☒ Yes  ☐ No  ☐ Unk | Victim involved in hunting related activity?  ☒ Yes  ☐ No  ☐ Unk |
| Shooter's activity at time of incident:  ☐ Stalking  ☒ Sitting  ☐ Standing  ☐ Other | Victim's activity at time of incident:  ☐ Stalking  ☐ Sitting  ☐ Standing  ☐ Other |

| Place an X in the appropriate boxes below: | | | | Place an X in the appropriate boxes below: | | | |
|---|---|---|---|---|---|---|---|
| Clothing Worn | Cap | Coat/vest | Trousers | Clothing Worn | Cap | Coat/vest | Trousers |
| Blaze Orange | | | | Blaze Orange | | | |
| Red | | | | Red | | | |
| Brown | x | | | Brown | x | x | |
| Blue or Green | | x | x | Blue or Green | | | x |
| Camo (not Camo-orange) | | | | Camo (not Camo-orange) | | | |
| Other? | | | | Other? | | | |

**IV.**

| Witness Name | Address | City | State/Province/Zip | Telephone |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**V.  \*ANIMAL BEING HUNTED BY SHOOTER**

☐Deer  ☐Duck/Geese  ☐Dove/Pigeon  ☒Feral Hog  ☐Furbearer  ☐Rabbit  ☐Snake  ☐Javelina
☐Exotic  ☐Non-game bird or mammal  ☐Pheasant  ☐Quail  ☐Bobcat/Lion  ☐Coyote  ☐Squirrel  ☐Turkey
☐Antelope  ☐Other Upland Game Bird  ☐Other Small Game  ☐Other: _____  ☐Unknown

**VI.  MISCELLANEOUS FACTORS**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Topography: | (Check one only) | ☒Hilly | ☐Flat | ☐Unknown | Describe _____ | | | |
| Visibility: | (Check one only) | ☒Good | ☐Fair | ☐Poor | ☐Unknown | Describe _____ | | |
| Type of cover: | (Check one only) | ☒Open | ☐Light | ☐Medium | ☐Dense | ☐Unknown | Describe _____ | |
| Lighting: | (Check one only) | ☒Sunny | ☐Overcast | ☐Dawn | ☐Dusk | ☐Dark | ☐Unknown | |
| Weather: | (Check one only) | ☒Clear | ☐Calm | ☐Windy | ☐Rain | ☐Snow | ☐Fog | ☐Unknown |
| Distance from muzzle to victim in yards: | | | ☒0-10 | ☐11-50 | ☐51-100 | ☐101+ | ☐Unknown | |

**VII.  \*CONTRIBUTING FACTORS**—Mark major factor with an X. Mark additional factors with an A.

**Hunter's Judgement Factors**
☒Victim moved into line of fire
☐Victim covered by shooter who
was swinging on game
☐Victim out of sight of shooter
☐Victim mistaken for game

**Safety/Law Violations**
☐Running/walking with loaded firearm
☐Removing/placing firearm in vehicle
☐Using firearm as a club
☒Discharge firearm in/on vehicle
☐Firearm fell from insecure rest
☐Shooting from/across roadway
☐"Horseplay" while hunting
☐Apparent use of intoxicants/drugs

**Miscellaneous Factors**
☐Fall from watercraft
☐Improper powder substitution
☐Mixed Ammo/Incorrect substitution
☒Faulty Equipment
☐Ricochet
☐Obstruction in barrel
☒Other   gun misfired

**Skill and Aptitude Factors**
☐Trigger caught on object
☐Loading firearm
☐Unloading firearm
☐Improper crossing of obstacle
☐Dropped firearm
☐Shooter stumbled and fell
☒Careless handling of firearm (please describe in detail)

**Archery Related Factors**
☐Arrows not matched to bow
☐Careless handling of bow/arrow
☐Carrying nocked arrow
☐Defective bow or arrow
☐Stringing/Unstringing bow

**Treestand Related Factors**
☐Fall while climbing into or out of position
☐Failure to use haul line
☐Failure to use TMA Approved Fall Restraint Device
☐Faulty/old material or equipment

Gun misfired and was passed to hunting partner improperly, butt first, pointing barrel at victims head when the gun fired.

**VIII.  Summary:**   see attached report
Shooter was charged with a homicide and was no billed by Palo Pinto Grand Jury.

**IX.  Attachments:**  ☐Continuation  ☐Photos  ☐Drawings  ☐Shooter's Statement  ☐Victim's Statement  ☐Witness' Statement  ☒Other
Note:   Please attach a copy of local law enforcement/hospital report, if available.

**X.**

| David L. Modgling | | Game Warden V | 06-27-11 |
|---|---|---|---|
| Game Warden's Printed Name | Game Warden's Signature | Title | Date of Report |

Please return through proper channels to:
Texas Parks and Wildlife Department
Attn: Hunter Education
4200 Smith School Road
Austin, Texas 78744
512/389-4999

*For Communications Division Use:*
Received
by: _____  _____  _____
Printed Name    Signature    Date

PWD-579-D0200-02/2011

**Office of the Sheriff**
**Palo Pinto County Sheriff's Office**
**Ira A. Mercer**

Offense: <u>10110702</u>

RESTRICTED NARRATIVE

### JORDAN/2516

On November 7, 2010 I, Chad Jordan Palo Pinto County Sheriff's Office, was dispatched to the McMurray Ranch located on FM 4 North in reference to an accidental discharge of a firearm that caused the death of Colgin, Clinton James (w/m 11/18/1981).

Upon my arrival to the McMurray Ranch, I went to the barn area located on the main road from the entrance to the Ranch. When I arrived at the barn I spoke with a subject identified as William Raymond Hullum (W/M 11/01/1987). I observed Mr. Hullum to be emotionally upset, crying. As I approached Mr. Hullum, he stated several times "it was an accident, it was an accident". I asked Mr. Hullum what took place and he stated he was driving through the field with Clinton Colgin in the passenger seat. As he was approaching a gate the two observed a pig in the pasture. Hullum advised Colgin was going to shoot the pig, but the gun would not discharge. Hullum advised Colgin was handing the gun over to Hullum when it discharged striking Colgin somewhere in the face. Hullum stated he heard the shot and instantly seen blood coming from Colgins face. Hullum stated he wasn't sure if he had grabbed the gun yet from Colgins when it discharged. Hullum then stated he jumped out of the truck and ran back to the barn area to get help.

I next went into the field and located the vehicle Hullum was operating. I observed a Ford F250 Pickup bearing TX license plate AR80314 parked near a wheat field at a cross section of fence. The pickup was still running with a rifle lying at the drivers' door and a white male sitting in the passenger seat with blood coming from his mouth and nose. Photographs were taken of the vehicle as well as the firearm, which was found to be a Remington model 700 .222 caliber rifle. The rifle was collected and transported to the Sheriff's Office. Baum-Carlock Baumgardner arrived and took possession of the body to transport it to the Southwest institute of forensic science (SWIFS) for autopsy at the request of Justice of the Peace Mitchell. The truck was left at the scene.

I next returned to the barns and made contact again with Hullum. A request was made for Hullum to come to the Sheriff's Office in order to obtain a statement from him. Hullum spoke with his father, William Stephen Hullum, and asked that he come at a later date after he spoke with an attorney.

On November 15, 2010 the Remington rifle was transported to the Texas Department of Public Safety Crime Laboratory located in Garland, Texas for examination. The exam requested was a function test. The results of this test were received on November 23, 2010 and showed the rifle to be operational with mis-feeding of the cartridge from magazine to chamber.

Armstrong/2521
Supplement Report

On 11/07/2010 I Deputy Casey Armstrong was contacted by Palo Pinto County Dispatcher Linda Calvin who stated that there had been a hunting accident at the Mc Murray Ranch. Linda stated that she was on 911 with a male subject Name Will who stated that his friend had shot himself and that I would know how to find them. Linda then gave me Will's phone number and stated that she was going to hang up the 911 line and that I needed to call Will.

I contacted Will by phone and he stated that he and his friend were hunting near the river field and that the gun accidentally went off and shot his friend in the head. I then asked Will what his full mane was and he stated William Hullum. I asked Will who had been shot and he stated Clinton Colgin. I then advised Will if Clinton was dead and he stated yes. I asked Will where he was and he stated I'm running to the barn. I told Will to wait at the barn until I could get there.

I then hung up the phone with Will and contacted Sgt. Chad Jordon and advised him of the incident. Jordon stated that he would head that way. I contacted Cpl. David Carlyle and advised him of the incident and he stated he would also head that way.

Upon arrival I observed that Sgt. Jordon and Cpl. Carlyle were already at the barn. I observed that Will was very upset and crying. Will came to me and stated I can't believe this happened, it was an accident. I advised Sgt Jordon that I knew Will personally and that I believed it would be best if I stayed with Will while he and Cpl. Carlyle conducted the investigation. Sgt. Jordon agreed and so I stayed at the barn with Will until the body had been removed from the ranch.

After the body was taken from the ranch Sgt. Jordon and Cpl. Carlyle arrived back at the barn, this is when Sgt. Jordon advised Will if he would come to the Sheriffs Office and give a statement of what had happened. Will stated that he would rather wait to give a statement until he had his lawyer present. Sgt. Jordon advised Will to contact Cpt. Craig Goen when he was ready to give a statement because he would be out of town for a few days.

**Supplement Report**
**10110702**
**Goen/2503**

On Friday November 19, 2010 William Raymond Hullum, W/M 11/01/1987, came to the
Palo Pinto County Law Enforcement Center for a formal statement. Hullum was not
under arrest and drove himself to the office. The interview was started at approximately
8:52 am. I asked Hullum to tell me what had happened the day of shooting. Hullum said
that they had seen a hog run in front of the truck and he exited the vehicle. Hullum said
that Colgin couldn't see the hog and was handing the rifle to Hullum, but first. Hullum
said that as he was getting the gun, it went off sticking Colgin in the face. I asked Hullum
if he touched the trigger and he said he didn't know, he could have. Hullum said that he
wasn't sure about touching the trigger.
The interview was video and audio recorded and a copy is attached to the case file.



# EXHIBIT D

## DECLARATION OF MARTIN A. BROWN

I, Martin A. Brown, under penalty of perjury do hereby declare and swear as follows:

1.     I am over 21 years of age and have personal knowledge of and am competent to testify to each of the matters set forth herein.

2.     On April 5, 2012, I spoke by telephone with William Raymond Hullum about the shooting incident of November 7, 2010, occurring in Palo Pinto County, Texas and involving Clinton Colgin.

3.     During my telephone conversation with Mr. Hullum, among other things, he stated each of the following facts to me:

    a.     That he was not working on November 7, 2010;

    b.     That he was on the Robert Farrell ranch property to hunt deer with Clinton Colgin and two other acquaintances;

    c.     That he and Mr. Colgin were riding together on the ranch property in a pickup truck;

    d.     That he was driving the truck and that Mr. Colgin was in the front passenger's seat;

    e.     That he and Mr. Colgin saw a wild hog;

    f.     That Mr. Colgin was handling a loaded rifle;

    g.     That he saw Mr. Colgin "draw down" on the hog from the passenger's seat;

    h.     That Mr. Colgin did not have a shot at the hog;

    i.     That Mr. Colgin was then attempting to hand the rifle to him (Hullum) when the rifle discharged killing Mr. Colgin.

1

I declare under the penalty of perjury under the laws of the United States of America, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 10 TH day of April 2012 at Glen Rose, Texas.

Martin A. Brown

2



# EXHIBIT E

Case 3:12-cv-01116-M   Document 2   Filed 04/11/12   Page 102 of 106   PageID 104

**Clinton Colgin**



Colgin, Clinton Clinton James Colgin, 28, died Sunday, Nov. 7, 2010, in a hunting accident in Palo Pinto County, doing what he loved best -- enjoying the great outdoors and the magnificence of God's creation. Memorial service: 11 a.m. Friday at St. Andrew's Episcopal Church, 917 Lamar St., Fort Worth. The family will receive friends at a reception following the service. Honorary Pallbearers: James Conrad Schmid, Frank Murchison Greenhill, Kyle Fredrik Oudt, William Kenneth Thurmond, Robinson Butler Howell, Robert Hale Belcher, Justin Walker Worrell, Walter John Clarke, Ford Bowen Santa Maria, Scott Anderson Stabler, Zach Martin McCutchin, Ronnie Lee Cooper, Jason Thomas Long, Christopher Lee Henry, Henry Carl Vandervoort, John Miles Lamont Tyler Gray Williams, Cameron Alexander Corbett, George William Kline, Benjamin Adam Wilson. Memorials: In lieu of flowers, donations can be made to the Clinton James Colgin Memorial Scholarship, Texas Tech Foundation, Box 41081, Lubbock, Texas 79409-1081. Clinton was born Nov. 18, 1981, in Dallas and grew up in Fort Worth. He graduated from Texas Tech University, was an avid Red Raider fan and a member of the Sigma Alpha Epsilon fraternity. He worked in commercial real estate for Armstrong Development. Clinton's greatest and most treasured love was his precious bride, Bianca, who gave him the happiest years of his life. Bianca was his soulmate, bringing him fulfillment and a sense of peace. Their home is in the historic Oak Cliff neighborhood of Kessler Park in Dallas. Clinton loved life and it radiated from him. He greeted the world with a captivating and contagious smile that distinguished him from all others. Clinton lived for his time with family and friends and the great outdoors: hunting, fishing and playing cowboy. Beloved son and brother, adoring husband and faithful friend to many. Clinton leaves a wonderful legacy to all who knew him and loved him. You will know a tree by its fruit, and Clinton was a tree heavy laden with the fruits of the Spirit; love, joy, peace, patience, kindness, goodness, faithfulness and gentleness. Survivors: His wife, Bianca Elliott Colgin; his parents, Tita and Conrad Schmid; his brother, Conrad Schmid; his sister, Gibbs Miller and her husband, John; his brother, Rob Schmid and his wife, Beth; his mother-in-law and father-in-law, Patti and Jimmy Elliott; his sister-in-laws, Lydia, Paige and Arden Elliott; his nieces and nephews, Sarah Beth, Preston and Pierce Schmid and Jack and Zettie Miller; and numerous aunts, uncles and cousins. Thompson's Harveson & Cole Funeral Home and Crematory 702 Eighth Ave., 817-336-0345

**Published in Dallas Morning News on November 10, 2010**

JS 44 (TXND Rev. 2/10)

ORIGINAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ianca Elliott Colgin, Individually, and as Next Friend of Arden Louise olgin, a Minor | Remington Arms Company, LLC, Sporting Goods Properties, Inc., Robert M. Farrell, et al. |

| (b) County of Residence of First Listed Plaintiff **Dallas** | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

**3-12CV-1116M**

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| effrey W. Hightower, Jr., Hightower Angelley LLP, 4144 N Central Expwy. te., 1230, Dallas, TX 75204; 214.580.9800; 214.580.9804 fax | James D. Jordan, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard St. Ste. 3800, Dallas, TX 75201; 214.855.7500; 214.855.7584 for Defendants Remington Arms Company & Sporting Goods Properties |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

APR 11 2012

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332; 28 U.S.C. § 1446

Brief description of cause:
Discharge of firearm resulting in death

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED: (See instructions)

JUDGE _____ DOCKET NUMBER _____

DATE
04/11/2012

SIGNATURE OF ATTORNEY OF RECORD
James D. Jordan / seo

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**United States District Court**
**Northern District of Texas**



**Supplemental Civil Cover Sheet For Cases Removed From State Court**

# 3-12CV-1116M

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office.  Additional sheets may be used as necessary.**

1.    **State Court Information:**

Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

| **Court** | **Case Number** |
|---|---|
| County Court at Law No. 1, Dallas County | CC-12-01595-A |

2.    **Style of the Case:**

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code.)

| **Party and Party Type** | **Attorney(s)** |
|---|---|
| PLAINTIFF:<br>Bianca Elliott Colgin, Individually and as Next Friend of Arden Louise Colgin, a Minor | Jeffrey W. Hightower, Jr.<br>State Bar No. 00793951<br>William O. Angelley<br>State Bar No. 24001658<br>Hightower Angelley LLP<br>4144 N. Central Expwy., Suite 1230<br>Dallas, Texas 75204<br>Phone: 214.580.9800<br>Fax:  214.580.9804<br>Email: jeff@hightangel.com<br>Email: wil@hightangel.com<br><br>Parker P. Polan<br>State Bar No. 24060432<br>400 W. 14th St., Ste. 100<br>Austin, Texas 78701<br>Phone: 512.472.8313<br>Fax: 512.472.2792 |

MHDocs 3751664_1 12794.2

DEFENDANTS:
Remington Arms Company, LLC and
Sporting Goods Properties, Inc.

James D. Jordan
State Bar No. 11012380
Munsch Hardt Kopf & Harr, P.C.
500 North Akard Street, Suite 3800
Dallas, Texas 75201
Phone: 214.855-7500
Fax: 214.855.7584
Email: jjordan@munsch.com

DEFENDANTS:
Robert M. Farrell, Robert M. Farrell, LLC,
Robert M. Farrell Development, Ltd.,
Robert M. Farrell Family Partnership #1,
Ltd., Robert M. Farrell Family Partnership
#2, Ltd. and North Rio Vista, Ltd.

Mark Ramsey
SBOT No. 16521700
Ramsey & Murray, P.C.
1500 CityWest Blvd., Suite 1000
Houston, Texas 77042-2354
(713) 613-5400
(713) 613-5414 (Fax)

3. **Jury Demand:**

Was a Jury Demand made in State Court?          ☒   Yes          ☐   No

    If "*Yes*," by which party and on what date?

Plaintiff, Bianca Elliott Colgin, Individually and     March 9, 2012
As Next Friend of Arden Louise Colgin, A Minor

Defendants, Robert M. Farrell, Robert M. Farrell,     March 28, 2012
LLC, Robert M. Farrell Development, Ltd.,
Robert M. Farrell Family Partnership #1, Ltd.,
Robert M. Farrell Family Partnership #2, Ltd. and
North Rio Vista, Ltd.
        Party(ies)                                              Date

4. **Answer:**

Was an Answer made in State Court?          ☒   Yes          ☐   No

    If "*Yes*," by which party and on what date?

Defendants, Robert M. Farrell, Robert M. Farrell,     March 28, 2012
LLC, Robert M. Farrell Development, Ltd.,
Robert M. Farrell Family Partnership #1, Ltd.,
Robert M. Farrell Family Partnership #2, Ltd. and
North Rio Vista, Ltd.
        Party(ies)                                              Date

5.      **Unserved Parties:**

The following parties have not been served at the time this case was removed:

| **Party** | **Reason(s) for No Service** |
|---|---|
| None | |

6.      **Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for that change:

| **Party** | **Reason** |
|---|---|
| None | |

7.      **Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| **Party** | **Claim(s)** |
|---|---|
| Plaintiff:<br>Bianca Elliott Colgin, Individually and As Next Friend of Arden Louise Colgin, A Minor | Plaintiff alleges Clinton Colgin was killed by the accidental discharge of a firearm manufactured by Remington Arms Company, LLC and/or Sporting Goods Properties, Inc. Plaintiff alleges respondeat superior and landowner negligence by the other defendants. |
| Defendants:<br>Remington Arms Company, LLC and Sporting Goods Properties, Inc. | |
| Defendants:<br>Robert M. Farrell, Robert M. Farrell, LLC, Robert M. Farrell Development, Ltd., Robert M. Farrell Family Partnership #1, Ltd., Robert M. Farrell Family Partnership #2, Ltd. and North Rio Vista, Ltd. | |